BRINKERHOFF and others *against* BROWN and others.

Different judgment creditors may unite in one bill for discovery and account, the object of which is to set aside impediments to their remedies at law, created by the *fraud* of their common debtor; and to have his estate distributed among them, according to the priority of their respective liens, or rateably, as the case may be.

A bill may be filed against several persons, relative to matters of the same nature, forming a connected series of acts, all intended to defraud and injure the plaintiffs, and in which all the defendants were, more or less, concerned, though not jointly, in each act.

THE bill stated, that on the 19th of *September*, 1815, the defendants, *Matthew Brown*, jr., *Thomas Mumford*, *Russel Smith*, *Oliver Culver*, *John Mastick*, and *Francis Brown*, formed themselves into a company, for the purpose of manufacturing cotton goods; and on the 2d of *October*, 1815, filed their certificate, pursuant to the act of the 22d of *March*, 1811, by which they became a corporation, by the name of " *The Genessee Manufacturing Company*," stating their capital to be 40,000 dollars, divided into shares of 100 dollars each, and the number of trustees to be *five*, the defendants first above named. By an *agreement*, which was set forth, the subscribers agreed to become stockholders for the shares affixed to their names, and to pay such instalments thereon as should be required, and to submit to the rules of the company. That the whole amount of shares were subscribed. That the subscribers have not been called upon for their subscriptions, except in a few instances, and those only for the first instalment. That the company purchased of the defendant, *T. M.*, a piece of land in the village of *Frankfort*, adjoining the canal, and four lots in the village; that at a meeting of the board of trustees, on the 1st of *October*,

*June 10th.*

1816, at which the *three* first named defendants were present, *M. Brown*, jr., the agent of the company, was directed to execute a bond and mortgage to the defendant, *T. M.*, to secure the sum of 2032 dollars, and 11 cents, with interest, being the consideration for the land so purchased, with a power of sale in the mortgage, and to affix thereto the corporate seal; which was accordingly done. The bond was payable in instalments. The mortgage was recorded the 19th of *October*, 1816. The company erected on the land a large factory and valuable machinery. The defendant, *R. Smith*, was employed to construct the machinery, and having completed it, the company, by order of the trustees, gave him their *notes*, payable to him or order, at different times. That *R. S.*, in *October*, 1817, applied to the plaintiffs, *Abraham Brinkerhoff*, jr., and *James L. Brinkerhoff*, merchants, in *New-York*, under the firm of *A. Brinkerhoff & Co.*, and the plaintiffs, *Richard Duryee* and *Cornelius Heyer*, merchants, under the firm of *Duryee & Heyer*, to purchase goods; and offered, as collateral security, two notes of the *Genessee Manufacturing Company*, signed by *M. B.*, jr., their agent, by order of the company, and indorsed by *R. S.*, dated *January* 1, 1817; one note for 3944 dollars, payable in one year, with interest, and the other for the same sum, payable in two years, with interest; and to induce the said plaintiffs to give him credit, *R. S.* stated to them, that he had constructed the machinery for the company at his own expense, which cost above 15,000 dollars, and that he received the notes in part payment; that he was one of the trustees, and well acquainted with the affairs of the company, which was solvent, their debts being principally the notes so given to him; and he referred the plaintiffs, for further information, to *Benjamin Huntington*, who had received a letter from the five trustees above named. That *B. H.* showed the letter to the plaintiffs,

in which the trustees, defendants, represented the company as perfectly solvent and prosperous, and pledging to *B. H.* their individual responsibility, to the amount of 3000 dollars, for cotton, which they requested him to purchase, on his credit, for the company. That the four plaintiffs, above named, confiding in these representations, sold goods to *R. S.*, amounting together to 5643 dollars, and 81 cents, and took his notes, payable in six months, and the notes of the *Genessee M. Co.*, indorsed by him, as collateral security. That the notes of *R. S.* have become due, and remain unpaid, and the notes of the *G. M. Company* became due, and were protested for non-payment; that the plaintiffs, *A. B. & Co.* sued the notes of the *G. M. Company*, and recovered judgment on one of them, the 9th of *November*, 1818, for 4512 dollars, and 63 cents, and on the other, the 21st of *May*, 1819, for 4642 dollars, and 79 cents; and executions were issued on the judgments, which were returned *nulla bona.* That the defendants, the above named trustees of the company, with a view to indemnify themselves against the guaranty contained in their letter to *B. H.*, and with the *intent*, as the plaintiffs *charged*, to possess themselves of the real and personal property of the company, for a very inadequate consideration, and to defraud the *creditors* of the company, and in violation of their trust, on the 23d of *March*, 1818, fraudulently caused a judgment to be entered upon a bond and warrant of attorney from the company to *B. H.*, for 1926 dollars, and 33 cents, in the Supreme Court; and on the 14th of *April*, 1818, caused a *fi. fa.* to be issued on the judgment, and the machinery and other property of the company to be sold, on a short notice, and without the knowledge of the plaintiffs, for 555 dollars; and that *M. B.* and *J. W.*, two of the trustees, became the purchasers. That the machinery was worth, at the time, 15,000 dollars, and the other property so sold, 3000 dollars. That *R. S.* being largely indebted to several

persons in *Massachusetts,* assigned to the plaintiff, *George Sullivan,* in trust for those creditors, all the interest of *R. S.* in the balance which might be due to him on the two notes of the company delivered to the four plaintiffs above named, after satisfying their demands, and also, a note made by the company, in favour of *R. S.,* dated *January* 1, 1817, for 6695 dollars, and 33 cents, on which the sum of 4551 dollars had been paid; of which assignment the company were duly notified, and payment demanded of them, which was refused. That the plaintiff, *G. S.,* recovered judgment on the note against the company, the 15th of *January,* 1819, for 2566 dollars, and 70 cents, and issued an execution thereon, which had been returned *nulla bona.* That the trustees of the company, with the like fraudulent intent, and in violation of their trust, caused a judgment to be entered up in the Supreme Court, on the 16th of *July,* 1818, on a *judgment bond,* executed by *M. B.,* as agent aforesaid, in favour of himself, and of the defendants, *Francis Brown* and *David Brown,* his brothers, for 5341 dollars, and 6 cents; and caused an execution to be issued on the judgment, and the real estate of the company to be sold under it, and under the execution on the judgment in favour of *B. H.,* on the 19th of *February,* 1821, and the defendants, *M. B.,* jr., *F. B.* and *D. B.,* became the purchasers of such real estate, for 6455 dollars, and 74 cents; which was much less than its value. That by such sales of all their property, the company became dissolved, and the trustees, and the other stockholders, became liable, not only to the amount which remained unpaid on their shares, but for the payment of the debts of the company, to the extent of their shares of stock. That *T. M.* proceeded to foreclose his mortgage, and advertised the premises for sale, under the power contained in the mortgage; and the plaintiffs paid the balance of 375 dollars, due to him, and took an assignment of the mortgage, dated *Ja-*

*nuary* 4, 1819, to *A. B. & Co.*, in trust for all the plain-
tiffs, who have contributed proportionably to the payment
of the consideration. The bill charged that the trustees
refused to pay the plaintiffs, &c. That the trustees and
their confederates, by filing their certificate under the sta-
tute, held out to the world a false credit and appearance,
for the purpose of deceiving and defrauding those who
dealt with the company, &c. and that they ought to be
regarded by the creditors as the *bona fide* holders of stock
not subscribed for, &c.; and *prayed* for a discovery of
the names of the stockholders who subscribed, the amount
of their subscriptions, how much had been paid thereon,
and the balance due from each, and the names of the
stockholders at the time the company was dissolved, and
the amount of shares owned by them; and that the defend-
ants be decreed to fill up the stock subscribed, and to sell
the property of the company, and apply the proceeds to
pay the plaintiffs, and to pay what may remain due, as
individual stockholders, at the time of the dissolution of
the company, and for general relief.

The defendants, *M. B.*, jr., *O. C.*, *J. M.*, *D. B.*, *S. S.*,
and *J. W.*, *demurred* to the bill; the defendant, *T. Mum-
ford*, answered; and the defendants, *F. B.* and *R. S.*,
suffered the bill to be taken, *pro confesso*, against them.

*J. C. Spencer*, in support of the demurrer, contended,
1. That the bill wanted equity. The plaintiffs do not
show that they have used all the means in their power to
obtain payment at law. They merely state, they issued
executions, which had been returned " *nulla bona*," from
which it is not to be inferred, that the defendants had no
lands nor tenements, out of which the judgments might be
satisfied. It does not appear but that they might have re-
deemed the real estate purchased by the *Browns*, in *Febru-
ary*, 1821. Nor do the plaintiffs state into what counties

1822.

BRINKER-
HOFF

*v.*

BROWN.

they issued executions, which ought to have been done, to show that they had used all legal diligence. (*Brinker-hoff* v. *Brown*, 4 *Johns. Ch. Rep.* 675.)

The plaintiffs seek to charge the defendants as stockholders, and aver, that they do not know who the stockholders are, without stating, that they called on the defendants for information, and that they refused to give it.

The bill seeks to redeem the personal property purchased by *M. B.* and *J. W.*, but does not allege, that they offered those two defendants to redeem, and that they refused.

Again ; the bill seeks to charge the defendants as stockholders, on the ground that the company was dissolved, in consequence of the sale of the real and personal estate on execution, on the 19th of *February*, 1821 ; but, under the act relative to judgments and executions, (Sess. 43. ch. 184.) the title of the company was not devested, until fifteen months after the day of sale, and which period had not expired when the bill was filed. Besides, though the company had no property, it is not to be considered as dissolved, by any act of forfeiture, in a collateral suit, until a judgment of *ouster* has been pronounced. (2 *Kyd on Corp.* 515, 516. 3 *Term Rep.* 244.)

The bill prays, that the trustees may be compelled to sell all the property of the company, including their lands, without showing that the plaintiffs are the oldest judgment creditors, or that they have the earliest *lien* on the land.

2. That the bill is multifarious, 1st. as to the parties ; 2d. as to the objects of the bill. *First*, as to the parties : The plaintiffs are improperly joined. Though *A. B. & Co.* and *D. & H.*, may be deemed connected in interest, in regard to the notes of the company, held by them as security, yet *Sullivan's* interest, as trustee for the *Massachusetts* creditors of *R. Smith*, in regard to the note of the company, assigned to him by *R. S.*, for 6695 dollars, and 33

cents, and the note of 3944 dollars, endorsed by *R. S.*, has no connexion whatever with that of the other plaintiffs, but is wholly independent. (2 *Vesey*, jr. 323. 328.)

All the defendants ought not to have been joined in the same suit. One object of the bill is, to charge the *trustees*, individually, for neglect of duty, and fraud ; but *D. B.* and *F. B.*, are not charged as ever having been trustees. Another object is to charge the defendants as *stockholders*, but *D. B.*, *Ira West*, and *Silas Smith*, are no where charged to have been stockholders. A further object, is to redeem the personal property purchased by *M. B.*, jr., and *J. W.*, but the other defendants have no concern whatever with that property.

The bill charges, that *M. B.*, *S. S.*, *O. C.*, *J. W.*, and *R. S.*, fraudulently confessed a judgment to *B. H.* and to *F. B. & Co.*; yet the other defendants, *J. Mastick* and *T. M.*, are not stated to have any interest in those judgments.

Again ; the bill prays, that all the defendants may compel the stockholders to fill up their shares ; yet there are only five who are trustees; and the other defendants, of course, cannot act in that respect. The bill also charges *M. Brown*, jr., in five different capacities; for fraud and neglect of duty as a trustee, as a stockholder, as a purchaser of personal property, as a fraudulent judgment creditor; and to account in his capacity of trustee.

*Second;* There are six distinct subjects embraced in the bill, which are totally disconnected and independent of each other : 1. To charge the trustees for neglect of duty, &c. 2. To compel the stockholders to make up the deficiency in their payments. 3. To make them liable, individually, in consequence of the alleged dissolution of the corporation. 4. To redeem the personal property purchased by *M. B.* and *J. W.* 5. To set aside the judgment confessed to *J. B. & Co.* 6. Relative to the mortgage to *T. M.*, assigned to the plaintiffs. (*Cooper's Equ. Pl.* 183.

BRINKER-
HOFF
v.
BROWN.

*Mitf. Pl.* 145, 146, 147.  1 *Harris's Ch. Pr.* 611.  2 *Madd. Ch.* 234.  1 *East's Rep.* 226, 227.  4 *Johns. Ch. Rep.* 204.  2 *Ansth.* 469.  2 *Sch. & Lef.* 370.)  Besides these grounds of demurrer, specially stated, there are others which may be presented *ore tenus,* as want of parties.  The statement of the mortgage is either impertinent, or the object must be to foreclose it; in which case, *B. Huntington* ought to have been made a party.  (6 *Vesey,* 779.  8 *Vesey,* 408.  *Coop. Equ. Pl.* 112.  4 *Johns. Ch. Rep.* 605.)  The *Genessee Manufacturing Company,* also, in their *corporate* name and capacity, ought to have been made a party: 1st. To answer to the charge of a balance due on the mortgage.  2d. Because, it is yet seised of the real estate, sold under the execution, the time allowed for redemption, by the statute, not having expired.  3d. Because, its rights and interests are affected by several of the charges in the bill.  (4 *Johns. Ch. Rep.* 649.  7 *Vesey,* 3.)

*T. A. Emmet,* and *G. Brinkerhoff,* contra.  In *Esdell* v. *Buchanan,* (2 *Vesey,* jr. 83.) Lord *Loughborough* said, " There is vice in the demurrer, which is fatal at law.  It is a *speaking* demurrer.  There is *argument* in it; viz.:  in or about the year 1770, *which is upwards of twenty years before the bill filed.*"  If the demurrer, in that case, was held vicious, as a *speaking* demurrer, for the modest suggestion that the year 1770 was twenty years before filing the bill, the demurrer, in the present case, which is so *talkative* and argumentative, must be condemned as bad.

The first objection is, that the bill wants equity; and six distinct causes are stated in the demurrer.  But the statement in the bill is in strict accordance with precedents.  (1 *P. Wms.* 445. *a case cited.*  3 *Atk.* 192.  4 *Johns. Ch. Rep.* 681.)  The plaintiffs were not bound to allege that they had issued executions, having stated themselves to be judgment creditors, and, as such, having

a *lien* on the real estate of the *G. M. Company*. (4 *Johns. Ch. Rep.* 486.) The demurrer being to the whole bill, must be sustained throughout. If there is any part, either as to the relief, or discovery sought, to which the defendants ought to answer, the demurrer must be overruled. (*Mitf. Pl.* 173. 1 *Ves.* 248.) Now, as regards the judgment entered up against the company, in favour of the *Browns*, the plaintiffs are entitled to an answer and inquiry. (4 *Johns. Ch. Rep.* 686.) The plaintiffs are also entitled to a discovery of the original stockholders, and who were such at the time of the sale of the property of the company, and how much they had paid on their respective shares.

It cannot be a valid objection to relief against a judgment alleged to be fraudulent, that the plaintiff might have redeemed the property from the encumbrance of such judgment. Another cause of demurrer is founded in misapprehension, for the bill expressly charges, that the defendants refused to disclose the names of the stockholders, or amount of their respective subscriptions. The case of *Slee* v. *Bloom and others*, recently decided in the Court of Errors, (19 *Johns. Rep.* 456.) establishes the principle, that the sale of the property, machinery, &c. of the manufacturing company, was a virtual dissolution of the corporation.

It is sufficient to entitle the plaintiffs to an inquiry and relief, that they are stated to be judgment creditors, having a *lien* at law upon the real estate, which is attempted to be defeated by fraud. (2 *Johns. Ch. Rep.* 296, 297.)

2. As to the objection, that the bill is multifarious, &c. The plaintiffs sue in one common character as judgment and execution creditors, who, having established their *lien* at law, apply to this Court to enforce it. They have a common, though not an equal, interest in the judgment recovered by *B. & Co.*; and it is admitted, that *Sullivan's* interest, so far as it applies to the surplus of the notes held

1822.

BRINKER-
HOFF
v.
BROWN.

by *B. & Co.*, may be connected with the other plaintiffs. The additional claim which he is alleged to have, does not destroy that connexion. They are all entitled to the same relief, for the same fraud and misconduct, and against the same persons and property. *Sullivan* being interested in the same judgment with the other plaintiffs, is rightly made a party, *pro tanto.* The demurrer, then, cannot prevail, though the Chancellor, on the hearing, might not think him entitled to relief on the subsequent judgment. The case of *Harison* v. *Hogg*, (2 *Vesey*, jr. 323. 328.) has no application. The bill there was for an account of distinct concerns, and the plaintiffs sued in different characters.

In regard to the defendants, the plaintiffs seek to have their debts paid out of the property of the company, and which has been withdrawn from the reach of their executions, by different persons, but to every part of which the plaintiffs have a right to look for satisfaction. The plaintiffs claim against all the defendants only one general right. (*Mitf. Plead.* 147. 2 *Johns. Ch. Rep.* 283.)

Though *D.* and *F. Brown* are not charged as trustees, yet they are expressly charged as having colluded with the trustees, and to have obtained, by fraud, a judgment with *M. B.*, jr., against the company, under which they have sold the real estate of the company, and have become themselves the purchasers. (4 *Johns. Ch. Rep.* 686.)

Again; it is objected, that the bill seeks to charge the defendants as stockholders, and as *David B., I. West*, and *S. Smith*, are not charged as stockholders, they cannot be joined with the other defendants. But *West* and *Smith* are charged to have been trustees, and they signed the letter to *Huntington*, and procured the judgment to be confessed, by which the personal estate of the company was sold; and *D. Brown* is charged with similar conduct in regard to the real property; and it is charged, that by reason of such sales, the trustees and stockholders have made themselves liable, &c.

Though the bill charges the fraud to have been committed by the acting trustees, yet *John Mastick*, and *Thomas Mumford*, were necessary parties, as they were two of the original persons who formed the company, and signed the certificate which was filed for the incorporation; and by which, as the bill charges, a false and fraudulent credit was held out to the world. The bill prays, that the stockholders may be compelled to fill up the stock respectively subscribed, or so much thereof as may be requisite and necessary. The force and extent of the decree will necessarily depend on the disclosures in the answers, and the proofs in the cause. Though several matters are embraced in the bill, yet they are of the same nature, and are necessarily connected. One general right is claimed by the plaintiffs, to have their judgments and executions satisfied out of the real and personal estate of the *G. M. Company*. (*Mitford's Pl.* 147. 1 *Atk. Rep.* 282.) This Court endeavours to embrace the whole subject of controversy, and to decide upon and settle the rights of all persons interested in it. (*Cooper's Equ. Pl.* 185. 12 *Vesey*, 58.) The mention of the mortgage is an incidental statement, showing a further lien on the real estate; but being a prior lien, it forms no part of the prayer of the bill.

THE CHANCELLOR. Several grounds for the demurrer have been assigned, some of which are put upon record, and others are assigned, *ore tenus*, at the bar, according to the course of the practice.

I have no doubt, that the bill contains, within itself, sufficient equity to entitle the plaintiffs to relief, if the other objections can be surmounted. The charge of multifariousness is the most difficult to dispose of, and the most perplexing.

In the first place, it is objected, that the plaintiffs are not entitled to join in one suit, in respect to some of the *items* of their demand. The four first named plaintiffs are joint-

*Margin notes:*

1822.

BRINKERHOFF
v.
BROWN.

Causes of demurrer may be assigned *ore tenus*.

ly interested in the two judgments obtained by *B.* and *B.* against the *Genessee Manufacturing Company*, and *S.*, the last plaintiff, is interested in the surplus of those judgments, after the debts of the other plaintiffs, for which those judgments are held as a collateral security, shall have been satisfied. All the plaintiffs appear, also, to be jointly interested in the mortgage given by the *Genessee Company* to *Mumford*, and by him assigned to *B.* and *B.* So far they were all, doubtless, properly united as plaintiffs. But it appears, that the plaintiff, *S.*, has obtained two judgments against the *Genessee Manufacturing Company*, which he holds in trust for certain creditors of *Russell Smith*, residing in *Massachusetts*, and the other plaintiffs do not appear to have any interest in those two last judgments. Here, then, is the case of joint and several demands united in the same bill, and the question is, whether it can be permitted.

In *Harison* v. *Hogg*, (2 *Vesey*, jr. 323.) joint and several demands, in the same bill, by two plaintiffs, was held bad upon demurrer. The two plaintiffs were jointly concerned in one of the charges in the bill, and one of the plaintiffs was solely interested in the other two charges. The bill was for an account of the sales of certain prints and engravings, belonging to both the plaintiffs, in respect to one work, and to one of the plaintiffs only in respect to two others; and one cause of the demurrer was, the joining of those distinct causes of action in the same bill. The *Master of the Rolls* held the objection to be insuperable, and that, upon the principle of the bill, if ten men were in partnership, and had a joint demand, each might set up a separate demand. The consequences would be absurd. The death of a co-plaintiff does not abate the suit; and is the defendant to answer all that relates to the dead man?

This case is not analogous, in its circumstances, to the one before me, and it may be questionable, whether the principle applies. It was a case in which separate unli-

quidated accounts were called for, and in which the defendant was to account to the plaintiffs, jointly, for the sales of their joint work, and to one of the plaintiffs only for the sales of his two separate works.   Here, the plaintiffs are judgment creditors, at law, seeking the aid of this Court to render their judgments and executions available, against certain fraudulent acts, equally affecting all of them.   The question is, whether judgment creditors, whose rights are established, and their liens fixed, at law, may not unite in a bill to remove impediments to the remedy, created by the fraud of the opposite party.   It is an ordinary case in this Court, for creditors to unite, or for one or more, on behalf of themselves and the rest, to sue the representative of their debtor, in possession of the assets, and to seek an account of the estate.   This is done to prevent multiplicity of suits, a very favourite object with this Court; and this principle so far controls the other rule, which preserves, in some degree, an analogy between pleadings in Chancery, and the simplicity of declarations at common law.   There is no sound reason for requiring the judgment creditors to separate in their suits, when they have one common object in view, which, in fact, governs the whole case.   There is no particular matter in litigation peculiar to each plaintiff, and if they were obliged to sue separately, it may be pertinently asked, *cui bono?*   Their rights are already established, and the subject in dispute may be said to be joint, as between the plaintiffs, on the one hand, and the defendants, on the other, charged with a combination to delay, hinder, and defraud their creditors.   If each judgment creditor was to be obliged to file his separate bill, it would be bringing the same question of fraud into repeated discussion, which would exhaust the fund, and be productive of all the mischief and oppression attending a multiplicity of suits.   It appears to me, therefore, that the judgment creditors, in cases of fraud in the original debtor, have a right to unite in one bill, to detect and suppress

1822.

BRINKER-
HOFF
v.
BROWN.

Different judgment creditors may unite in one bill against their common debtor; the object of all of them being the same, for the aid of the Court to enforce their *liens* at law.

that fraud, and to have the debtor's fund distributed according to the priority of their respective liens, or rateably, as the case may be, equally as well as they may now, in ordinary practice, unite in one bill against the legal representatives of the debtor.

Lord *Kenyon*, who was a great master of equity practice, observed, that, *generally speaking*, a Court of equity would not take cognizance of distinct and separate claims of different persons in one suit, though standing in the same relative situation. He held, that where an estate had been contracted to be sold in parcels, to many different persons, a bill could not be filed in the name of all of them, to compel a specific performance ; and the reason was, that each party's case would be distinct, and would depend upon its own peculiar circumstances. There must be a distinct bill on each contract. (*Rayner* v. *Julian*, *Dickens*, 677. 1 *East*, 226, 227.) He admitted, there were excepted cases to this general rule, and mentioned that of creditors calling for an account of the estate of the deceased debtor ; and there is nothing in the principle of his decision, to prevent another exception in a case like the present. It was agreed by the Chief Baron, in *Ward* v. *The Duke of Northumberland*, (2 *Anst.* 469.) that unconnected parties might be joined in one suit, where there *was a common interest among them all, centering in the point in issue in the cause ;* and, if I am not mistaken, it is the case in the present suit, as respects the plaintiffs. The *gravamen* of the bill is fraud, equally injurious to all the plaintiffs, and their interests all centre on that point.

But it is urged, that the bill is multifarious, in uniting all the defendants in one bill, upon totally distinct and unconnected matters.

There is a charge of fraud against the five defendants, who were trustees when the debts with the plaintiffs were contracted, and who are charged with an intent to defraud them. The fraud consists in confessing judgment to *B.*

*Huntington*, and in causing the personal estate of the *Genessee Company* to be sold under it, and purchased in by two of these trustees; and in confessing another judgment in favour of one of these trustees, and two other defendants, and in causing the real estate of the company to be sold under it, and purchased in by themselves. This charge of a combined fraud, affects seven of the defendants, for, though two of them were not concerned in every part of this fraudulent conduct, they were concerned in the last judgment and purchase under it, and the entire act is averred to have been poisoned with a fraudulent intent as respected the creditors. There are two remaining defendants who are charged as being concerned in the first organization and incorporation of the company, and who were among the first trustees, but they are not implicated in the subsequent transactions. One of them has answered, and has, of course, waived any objection to the union of parties, though possibly if he might demur, the other defendants may also. The objection to a want of connexion in the subject matter, would seem to be mutual. The only remaining defendant, *Mastick*, is a party to the demurrer, and the embarrassment in the case is to render him and *Mumford* suitable parties to the bill. The original trustees are charged with having commenced the system of fraud, which was consummated by the acts to which I have referred. By filing a certificate of the extent of capital, they are stated to have held out to the world a false appearance, for the purpose of deceiving and defrauding those who dealt with them. It thus appears, from the bill, that all the defendants were not jointly concerned in every injurious act charged. There was a series of acts on the part of the persons concerned in this *Genessee Company*, all produced by the same fraudulent intent, and terminating in the deception and injury of the plaintiffs. The defendants performed different parts in the same drama; but it was still one piece—one entire per-

1822.

BRINKER-
HOFF
v.
BROWN.

formance, marked by different scenes; and the question now occurs, whether the several matters charged, are so distinct and unconnected, as to render the joining of them in one bill a ground of demurrer.

A review of the few leading cases on this point, will assist us in coming to a correct conclusion.

In *Berke* v. *Harris*, (*Hard.* 337. 15 *Car.* II.) the bill, as to one defendant, was to discover by what title he held such a meadow, in which the plaintiff alleged he had an interest for life, as keeper of *Gloucester Castle;* and as to the other, it was for an annuity which was due from him to the plaintiff, as such officer. The defendants demurred, because the bill concerned *things of several distinct natures*, against several defendants, which would require *distinct answers* and examinations, and the charge of each defendant would be uselessly increased. The demurrer was allowed for that cause, and the Court observed, that a bill against several persons, as against one for tithes, and against another for the glebe, would be bad; but it would be good against several for tithes only, *because they are of the same nature*. So, a bill against divers tenants for several distinct matters, as common, waste, &c. would be ill, though the foundation of the suit, viz. the manor, was an entire thing.

Afterwards, in *Hester* v. *Weston*, (1 *Vern.* 463.) a demurrer was allowed to a bill, because it contained several matters *not relating one to the other*, and in some of which the defendant was *not concerned*. But in the case of *The Mayor of York* v. *Pilkington*, (1 *Atk.* 282.) a bill to quiet the plaintiff in a right of fishery, was supported, on demurrer, against several defendants *claiming distinct rights;* and though there was *no privity* between them and the plaintiff, yet he had a general right to a sole and separate fishery, extending to all the defendants; and the defendants, on the issue to try the general right, might avail themselves of their distinct rights. Such a bill was held ne-

cessary for the sake of peace, and to prevent a multipli-
city of suits.

Several modern cases have led to a full and accurate
discussion of this subject.

In *Dilly* v. *Doig*, (2 *Vesey*, jr. 486.) it was held by
Lord *Loughborough*, that a proprietor of a copyright
could not sue, in one bill, two defendants who had invaded
it, as there was *no privity* between them, and their rights
were distinct.   There must be separate bills upon distinct
invasions of a patent; but it would be otherwise of a right
of fishery, or respecting the erection of a mill.   About
the same time, the case of *Ward* v. *Duke of Northumber-
land*, already mentioned, was decided in the Exchequer.
It was a suit against two defendants, jointly, as executors,
and against one of them as heir, for an account under an
agreement made with the ancestor.   The defendants de-
murred separately, as being improperly joined; and after
a full and able argument, in which the counsel, in support
of the bill, insisted, that in a Court of equity *the connexion
of the subject matter* was sufficient to join parties, who
were not joined in interest, as in a bill to redeem against a
first and second mortgagee, or a bill for an account of tithes
against several tenants, the Court allowed the demurrers,
and the principle stated by the counsel could not have been
considered applicable to the case.   As to one of the defend-
ants, he was sued in different characters; as executor, and
personally in relation to his private concerns.   The two de-
mands against him were of a similar nature, but perfectly
*distinct and unconnected*.   As to the other defendant,
who was sued as executor, a considerable part of the bill
related to the private concerns of his co-defendant, and
had no connexion with the estate of the testator.   The
bill blended matters which had no other connexion, than
that one of the defendants was a party in them all.   The
same rule of pleading was considered by Lord *Redesdale*,
in *Whaley* v. *Dawson*; (2 *Sch. & Lef.* 367.) a demurrer

was allowed to a bill against two defendants, for several and distinct matters and causes, that had no relation to, nor dependence on each other. The rule was here declared to be, that where there was *a general right claimed by the bill, and covering the whole case,* the demurrer would not be allowed, *though the defendants had separate and distinct rights.* The Chancellor referred to the case before Lord *Hardwicke,* already cited, and to bills for tithes against several defendants, where the cases may all be distinct; and he did it the better to illustrate the rule, that where there was one general right claimed by the plaintiff against all the defendants, the suit would lie, on the ground of preventing multiplicity of suits. But *where the subjects of the suit* are in themselves perfectly distinct, the demurrer will hold, and a plaintiff cannot bring into the compass of one suit such different objects. It obliges each defendant to the unnecessary trouble and expense of a litigated question with which he has no concern. Again, in the late case of *Saxton* v. *Davis,* (18 *Vesey,* 72.) a bill was filed by a bankrupt and his assignees, under an insolvent act, against the representatives of the deceased assignees, under the commission of bankruptcy, and others, for an account of the estate. Several grounds of demurrer were stated on the record, but it was also objected, *ore tenus,* at the bar, that the suit was multifarious, by uniting defendants having distinct interests, and calling on them to answer charges perfectly distinct, and relating to different subjects, and in which they had no common interest. Lord *Eldon* allowed the demurrer, because the bill sought to enforce different demands against persons liable respectively, but not as connected with each other. It was well observed by Sir *Samuel Romilly,* in that case, that the objection to a bill, as multifarious, would be at an end, if the answer to that objection was admissible, that if all the parties were concerned in *one* transaction, all but that one might be left out of consideration.

The principle to be deduced from those cases is, that a bill against several persons must relate to matters of the same nature, and having a connexion with each other, and in which all the defendants are more or less concerned, though their rights in respect to the general subject of the case may be distinct; and when we consider, that the plaintiffs, in the case now before me, are judgment creditors, having claims against the *Genessee Company* perfectly established, and not the subject of litigation in this suit; and that the general right claimed by the bill is a due application of the capital of that company to the payment of their judgments; that the subject of the bill and of the relief, and the only matter in litigation is, the fraud charged in the creation, management, and disposition of that capital, and in which charge all the defendants are implicated, though in different degrees and proportions, I think we may safely conclude, that this case falls within the reach of that principle, and that the demurrer cannot be sustained.

The rules of pleading in Chancery are not so precise and strict as at law, and are more flexible in their modification, and can more readily be made to suit the equity of the case and the policy of the Court. The rule, for instance, that all persons materially interested must be made parties, is an example of the kind; and there are various cases where all accounting parties are not required to be brought in. There are, as Lord *Eldon* observed, in *Cockburn* v. *Thompson*, (16 *Vesey*, 321.) numerous cases, forming exceptions, under circumstances, to the general rule, that all persons having present valuable interests in the same subject must be made parties. The case, also, of creditors suing on behalf of themselves and all others, is another instance of the relaxation of the severity of a general rule of pleading.

The remedy would, of course, be varied, and adapted to the case of each individual defendant, if the general

1822.

BRINKER-
HOFF
v.
BROWN.

charge of fraud should be established; and if it should only be established in part as against some of the defendants, and not as against others, the decree would then also be adapted to the proof. I do not see that this circumstance can create any difficulty in sustaining the bill. It is cheapest, and best for the interest of all parties, that the subject of the fraud, in all its parts, should be investigated and settled in one suit. There is another consideration, to show that a demurrer of this kind should be cautiously received; and that is, the difficulty and the peril attending the selection by the plaintiff of proper parties. It is a very frequent objection raised in the answer, and at the hearing, that all necessary parties are not before the Court, and there is no question of practice more embarrassing to the plaintiff. If he should happen to err on the other side, and bring in persons against whom no charge can be supported, the bill as to them is usually dismissed with costs, and the inconvenience, upon the whole, is much greater from the want than from the redundancy of parties. In this very case, there is an objection, under the demurrer, made *ore tenus*, to the want of *Huntington*, the judgment creditor, as a party. But, it is not alleged that *H*. was a party to any fraud, and the validity of his judgment is not drawn in question, and the object of the bill is not to disturb it, or any payment made under it. The bill seeks only to make the purchasers at the sale under the judgment, account for the property fraudulently purchased in. Nor need *H*. be a party, to give him an opportunity of redeeming the mortgage to *Mumford* mentioned in the bill; for it is not sought to foreclose that mortgage by any sale under it, and it seems to be mentioned rather incidentally, as one of the *items* of the demand to be settled, when the property shall be recovered and applied. It may further be observed, that there does not appear to be any direct averment that the judgment of *H*. was actually subsisting and unsatisfied at the commencement of the suit. I apprehend

that the bill should have been positive on this point, and have left no doubts as to the fact, before the want of *H.*, as a necessary party, was made the ground of demurrer to the bill. It is four years since execution was issued on that judgment, and a part of it was then satisfied, and the whole may possibly be satisfied before this time.

1822.

BRINKER-
HOFF
v.
BROWN.

Another objection, also made *ore tenus*, is, that the *Genessee Manufacturing Company*, by its corporate name, and in its corporate capacity, is not made a party. I should have listened to this objection, and have deemed it unanswerable, if the recent decision of the Court of Errors, in *Slee* v. *Bloom*, (*a*) had not admonished me of an error on this subject. That case goes the length, as I have been told, of holding a corporation like the present one, dissolved by insolvency and sale of their property, so as to render the stockholders responsible to the extent of their shares, without any judicial process and judgment of forfeiture. It is probable I may not be accurately informed; and in the mean time, and in this state of uncertainty and perplexity, as to the real doctrine of that Court, I cannot deal safely either way with the question of the existence or dissolution of that corporation. I will, therefore, not meddle with it at present, or interfere, so far as to sustain the demurrer on that ground.

The demurrer must, therefore, upon all the points taken, be overruled, with a reservation of the question of costs, and with the order, that the defendants answer in the usual time.

Order accordingly.

(*a*) Vide 19 *Johns. Rep.* 456—486.