## LEWIS v. THE ST. ALBANS IRON & STEEL WORKS AND OTHERS.

### [ IN CHANCERY. ]

*Pleading in Equity.    Parties Defendant.    Multifariousness.
Corporations.    Joinder of Officers for Purposes
of Discovery.*

The directors of corporations are trustees of the stockholders, and liable for the willful loss or misappropriation of the trust funds or property; and, in a bill against a corporation, the officers of the corporation may be made parties defendant for purposes of discovery. Therefore a bill by a stockholder against the corporation and its directors and treasurer, alleging various fraudulent transactions between various directors, and various directors and the treasurer, on one hand, and the directors as a board on the other, out of which such directors and treasurer made great gains at the expense of the corporation, and praying for restitution of gains so made, and for discovery relative to such transactions, is not multifarious; for although the defendants may have distinct grounds of defence, only one general right is asserted by the orator.

APPEAL from the Court of Chancery.

The bill was brought by Hanson E. Lewis, a stockholder in the St. Albans Iron and Steel Works, a corporation duly organized in 1873, under act of the Legislature, for the purpose of making and selling iron and steel, and having its principal place of business in the village of St. Albans, against said corporation and Edward A. Smith, Guy C. Noble, Aldis O. Brainerd, F. Stuart Stranahan, and J. D. Soule, directors, and Herbert Brainerd, treasurer thereof. A. J. Gustin, the superintendent of said corporation, was also made a defendant, but the bill, as to him, was dismissed. The bill alleged that all of said directors except said Stranahan, had held their respective positions from the organization of the company, and that said Stranahan and said treasurer had held theirs the greater part of the time; that said company had been under the control of said defendant directors from its organization, and under their direction had built a rolling mill in said village and put a large quantity of machinery therein;

that said directors, acting for said company, bought, and said treasurer, also acting for said company, paid for, a great quantity of sand for use in and about the business of said company, ostensibly from the pretended firms of A. O. Hall & Co., and A. O. Brainerd & Co., but really from said Smith and Noble and the said Brainerds, who owned the pits from which it was taken, having come into ownership thereof through said A. O. Brainerd, who before that time had been to examine the pits as the director and agent of said company with the view of purchasing them in behalf of said company, but had finally bought them on his own account, with a view to the sale of the sand to said company, and had conveyed an interest therein to said Smith, Noble, and Herbert Brainerd ; that said pretended firms never had any existence, but were devised to cover the transactions alleged ; that said directors paid $3.75 per ton for the sand so bought, whereas it was worth only $1 per ton, and could and should have been bought for that price, as said directors then well knew ; that they thereby paid a large sum of money more than they should have paid for said sand ; that said purchases were made for the private benefit of the owners of the pits, and not for the benefit of the stockholders in said company, and with the full knowledge of the directors or some of them ; that said A. O. Brainerd purchased said pits and conveyed said interest therein to said Smith, Noble, and Herbert Brainerd for the purpose of private benefit through the sales of said sand to said company at an exorbitant price ; that the last named defendants continued to hold said pits for the purpose of making further like sales ; and that the orator believed they would continue to do so unless restrained by injunction. The bill further alleged that said Smith had received over $5,000 from the funds of said company for indorsing its paper, claiming to have indorsed paper to the amount of over $1,000,000 ; that in fact the amount had been largely increased by payment renewals ; that the amount on which he had been indorser had not exceeded an average of $25,000 ; that he had received one half of one per cent. on each successive indorsement, amounting to not less than six per cent. per annum ; that said paper was not more negotiable by reason of his indorsements ; and that said indorsements were made with

the knowledge and consent of said directors, as a mere cover for the charging and receiving of said money. The bill also alleged like transactions as to indorsements between A. O. Brainerd and said company, and alleged that said Brainerd, with the knowledge and consent of said directors, had discounted certain paper that he had indorsed, at twenty per cent. discount per annum, when it might have been discounted, as said directors well knew, at eighteen per cent. ; and that most of the paper indorsed by said Brainerd was also indorsed by said Smith, so that their combined indorsements cost said company not less than fifteen per cent. per annum. The bill further alleged that A. O. Brainerd had sold and delivered a large quantity of lumber to said company at prices far exceeding its value, as said directors well knew ; that the orator had reason to believe and did believe that said directors had allowed and paid large sums to the firm of Noble & Smith for pretended legal services—sums largely in excess of payment for any legal services needed by said company ; that said directors had paid the officers of said company large and excessive salaries ; that the orator had reason to believe and did believe that they had paid large salaries to men who had rendered little or no service therefor ; that they had received large sums of money as royalty on the purchase of materials for said company ; that said directors held in their hands for their private benefit large sums of money belonging to said company ; that the men and teams paid by said company had been used by said Herbert Brainerd for his private benefit ; that said directors had caused to be used and kept in and about the business of said company a large number of books in such a manner as to conceal from the stockholders in said company the real nature of said transactions ; that said Herbert Brainerd had had entire custody and control of said books and the papers and records of said company ; and that the orator was informed and believed that said directors had had exclusive control of the affairs of said company from its organization and still retained it. *Prayer*, that said directors and treasurer be decreed to refund to said company all money that they or any of them had received from the sale of said sand over and above what it was reasonably worth, with interest ; that those of the de-

fendants who owned said sand-pit be decreed to convey it to said company; and that said directors be decreed to refund to said company all money that they or either of them had derived from any of the alleged breaches of trust; for an accounting, and for general relief.

The defendants demurred, for that the bill was multifarious in joining various issuable and independent grounds of complaint against various defendants.

At the hearing, the court, ROYCE, Chancellor, sustained the demurrer. Appeal by the orator.

*H. C. Adams* and *A. G. Safford*, for the orator.

Multifariousness in a bill is the improper joinder of distinct and independent matters against one defendant or several. Story Eq. Pl. 266, 286; Adams Eq. Am. Ed. 615, *et seq.; Brinker-hoff* v. *Brown*, 6 Johns. Ch. 139. But it is not indispensable that all the parties should have an interest in all the matters in suit. It will be sufficient if each party has an interest in some of the matters, and that they are connected with the others. Story Eq. Pl. 267, *et seq.; Mix* v. *Hotchkiss*, 14 Conn. 31; *Campbell* v. *Mackay*, 1 Myl. & C. 603; *Eureka Marble Co.* v. *Windsor Man-ufacturing Co.* 47 Vt. 430, 440; *Attorney General* v. *Craddock*, 3 Myl. & C. 85.

The directors of corporations are trustees and agents of the shareholders and of the corporation; and the same rules are applied to the contracts of the directors with the corporation that are applied to the dealings of other parties having a fiduciary relation to each other. Perry Trusts, s. 207. All of the direct-ors are responsible for moneys received by any one of their num-ber. Story Eq. Jurisp. s. 1283.

If a demurrer is too general, i. e., if it covers the whole bill when it is good to a part only, it will be overruled. Story Eq. Pl. s. 443; *Metcalf* v. *Hersey*, 1 Ves. 248; *Shed* v. *Garfield*, 5 Vt. 39; *Robinson* v. *Guild*, 12 Met. 323; *Marcey* v. *Beekman Iron Co.* 9 Paige, 194.

If a bill for discovery and relief be good as to the discovery, a general demurrer to the whole bill is bad. *Livingston* v. *Livings-ton*, 4 Johns. Ch. 294.

And if any part of the bill entitles the orator either to relief or discovery, a demurrer to the whole bill cannot be sustained. *Livingston* v. *Story*, 9 Pet. 623, 658; Angell & Ames Corp. s. 674, *et seq. ;* 1 Paige, 37; 3 Ib. 233; 6 Ib. 229; 9 Ib. 188; 2 Sandf. 301. ˙

*H. S. Royce*, for the defendants. ,

The bill is multifarious, both for misjoinder of causes of complaint and for misjoinder of parties defendant; and the demurrer was properly sustained. Story Eq. Pl. 271, *et seq. ; N. Y. & N. H. R. Co.* v. *Schuyler*, 17 N. Y. 606; *Whitten* v. *Whitten*, 36 N. H. 334; *Bell* v. *Woodward*, 42 N. H. 181; *Coe* v. *Turner*, 5 Conn. 91, and cases *passim*.

No decree could be made against the defendant corporation, as such, in respect of any of the matters stated in the bill.

The opinion of the court was delivered by

DUNTON, J. The only cause of demurrer insisted upon in the argument is the alleged multifariousness of the bill. It is stated in the bill, that all the persons made defendants therein, except one, are directors of the defendant corporation, and that he is the treasurer thereof; that said corporation has been from its organization, and still is, under the management and control of said directors ; and that said treasurer has had, since the first year of its business, and still has, the entire custody and control of its books, papers and records. The directors of a corporation are trustees of its shareholders; and if the allegations in this bill are true, there is no question but that the directors of the defendant corporation have been guilty of the most flagrant breaches of trust, and such as it is the peculiar province of a court of equity to remedy, the corporation still being under their control.

The directors of a corporation are responsible for its management, and personally liable, to make good the loss for willful breaches of trust, or misappropriation of the trust or corporate funds and property. They are also equally liable for all losses of corporate funds and property caused by their willful failure to exercise such care and attention as the acceptance of such a trust imposes upon them. *Robinson* v. *Smith*, 3 Paige, 222.

It is also a clearly established principle of equity jurisprudence that whenever the trustee has been guilty of a breach of trust and has transferred the trust property by sale or otherwise, to any third party, the *cestui que trust* has a full right to follow such property into the hands of such third party, unless he stands in the situation of a *bona fide* purchaser for value, without notice. This is in effect what the orator is seeking to do by his bill of complaint, although he will not have to go beyond certain of the directors themselves and the treasurer, it being charged that the misapplied funds and property have, by one fraudulent scheme and another, gone into the hands of certain ones of these parties.

As is stated in Mitford's Chancery Pleadings, 181, and repeated by WILD, J., in *Dimmock* v. *Bixby*, 20 Pick. 377: "A demurrer for multifariousness will hold only when the plaintiff claims several matters of a different nature; and not when one general right is claimed by the plaintiff, although the defendant may have several and distinct rights."

The claims sought to be enforced by the bill all grow out of the alleged misconduct of the defendant directors in the management of the affairs of the defendant corporation; and the fact that all the defendants are not jointly interested in the fruits of such misconduct, but some are claiming one portion, and others another, under different fraudulent contracts or schemes, does not make the bill multifarious. *Gaines* v. *Chew*, 2 How. 619; *New York & New Haven Railroad Co.* v. *Schuyler*, 17 N. Y. 592; *Brinkerhoff* v. *Brown*, 6 Johns. Ch. 139.

As is said by McLEAN, J., in *Gaines* v. *Chew, supra:* "It is well remarked by Lord COTTENHAM in *Campbell* v. *McKay*, in 1 Myl. & Craig, 603, 'to lay down any rule applicable universally, or to say what constitutes multifariousness, as an abstract proportion, is, upon the authorities, utterly impossible.' Every case must be governed by its own circumstances; and as these are as diversified as the names of the parties, the court must exercise a sound discretion on the subject. Whilst parties should not be subject to expense and inconvenience in litigating matters in which they have no interest, multiplicity of suit should be avoided by uniting in one bill all who have an interest in the principal matter in

controversy, though the interest may have arisen under different contracts."

It has been repeatedly held that the officers of a corporation may be made parties to a bill for the purposes of discovery, to enable the complainant to obtain a knowledge of facts which he could not from the answer of the corporation under its corporate seal, without oath. Therefore, the treasurer of defendant corporation, even if he had had no complicity with the directors in the alleged fraudulent transaction, would be a proper party to the suit, in aid of the discovery sought by the bill. *Masters* v. *Rokie Lead Mining Co.* 2 Sandf. Ch. 333 ; *Vermillyea* v. *Fulton Bank*, 1 Paige, 37.

The decree of the Court of Chancery is reversed, the demurrer overruled, and cause remanded.