MEYERS *et al. v.* SCOTT *et al.*

(*Supreme Court, General Term, First Department.* November 23, 1888.)

1. CORPORATIONS—ACTIONS BY STOCKHOLDERS—SUFFICIENCY OF COMPLAINT.
   The complaint alleged that plaintiffs were stockholders in a railway construction company which, under a contract with a company whose road it had constructed, held land-grant bonds secured by mortgages, which it proposed to divide among its members and then dissolve; that the lands were to be appraised, and taken by the bondholders at their appraised value, thus securing equality of rights; but that bonds had been issued by the officers of the company under which such officers and others had derived unfair benefits, and appropriated valuable unappraised portions of the lands, leaving plaintiffs and other shareholders inferior lands. *Held,* that the facts alleged were sufficient to entitle plaintiffs to sue for protection and redress against such fraudulent conduct on part of the officers.

2. SAME—PARTIES—EQUITABLE ACTIONS.
   The complaint alleged, in substance, that defendants B. and S. were connected with and parties to the transactions by which the land-grant bonds were to be issued to the construction company, and that its president and secretary had confederated with B. and S. to secure to themselves the first of the bonds, in fraud of plaintiffs' rights, and that some of such bonds had been issued to B. and S. and others, and used by them in locating lands, thus obtaining unfair preferences. There was nothing in the complaint indicating that B. and S. had given a valuable consideration for the bonds. The prayer was for an accounting of the transactions of the company, including the receipt and disposition of the bonds, and that B. and S. account for those received by them. *Held,* that the complaint was sufficient, as against B. and S., under Code Civil Proc. N. Y. § 447, providing that in equitable actions all persons may be brought in who have any claim or interest in or to the subject-matter, or any part of it.

3. SAME—FAILURE TO REQUEST DIRECTORS TO SUE.
   The allegation that the president, secretary, and board of directors of the company were confederated with defendants B. and S. and others, in the misconduct alleged, shows a sufficient reason for not first applying to those officers to bring an action in behalf of the company. Besides, the rule does not apply where the action is brought to protect, not the rights of the company, but those of the shareholders themselves, alleged to have been violated by the officers.

Appeal from special term.

This was an action brought by Alfred G. Meyers and others against William L. Scott, William H. Barnum, and others, for equitable relief. The defendants Scott and Barnum demurred to the complaint, and from an interlocutory judgment sustaining their demurrers plaintiffs appeal.

Argued before VAN BRUNT, P. J., BRADY and DANIELS, JJ.

*Robert S. Green,* for appellants.    *Thos. G. Shearman,* for respondent Scott.
*Thomas Thacher,* for respondent Barnum.

DANIELS, J.    The plaintiffs are share-owners in the American Railway Im-
provement Company, a corporation formed under the laws of the state of Col-
orado.    It undertook the construction, for the New Orleans Pacific Railway
Company, of a railroad, with its branches, extending from New Orleans to
Shreveport, in the state of Louisiana, including a mileage of 336 miles.    The
New Orleans Pacific Railway Company was incorporated under the laws of
the state of Louisiana to construct and operate this line of road.    For the
work of constructing the railroad it was agreed that the improvement com-
pany should be paid $40,000 a mile,—$20,000 per mile in the stock of the New
Orleans Pacific Railway Company, and $20,000 per mile in its bonds; and
also that it should receive land-grant bonds secured by a mortgage upon a
grant of land made by act of congress to the New Orleans, Baton Rouge &
Vicksburg Railway Company.    This latter company obligated itself to trans-
fer its right to the grant of land, consisting of 10 alternate sections per mile
in each side of its road, to the New Orleans Pacific Railway Company; and
such transfer was afterwards made, which received the approval of the United
States commissioner of the general land-office in the city of Washington.    The
commissioner of the general land-office, by order of the secretary of the inte-
rior, afterwards issued to the New Orleans Pacific Railway Company patents
for 679,287 acres of the land; and that company issued, or prepared to be is-
sued, its bonds, amounting to the sum of $4,000,000, secured by a mortgage
upon the land granted in this manner.    It afterwards received additional pat-
ents for lands under the assignment, for which the New Orleans Pacific Rail-
way Company has executed and prepared its land-grant bonds and mortgages;
but whether this latter issue is intended to include the residue of the lands,
amounting to upwards of 900,000 acres, has not been stated in the complaint.
The improvement company completed the construction of the railroad and
branches early in 1884, and thereupon became entitled to the bonds secured by
the mortgages upon the grants of land.    These bonds were designed to be
payable out of the proceeds of the lands, or by the location and acceptance of
lands by the owners or holders thereof.    They were issued on the valuation of
the lands at a price not exceeding two dollars and a half an acre.    Some of
the lands were of no substantial value, while other portions varied in value
up to the sum of $30 an acre.    In 1885 the improvement company, by order
of its board of directors, issued a circular to its stockholders, in which it was
stated that a resolution had been adopted declaring a final dividend of 60 per
cent., payable in the certificates of the New Orleans Pacific Railway Company,
for the delivery of land-grant and sinking-fund bonds of the company, secured
by a mortgage and supplemental mortgage in the lands acquired and patented,
and to be patented, under the authority of the United States; and also 40 per
cent. in bonds secured by mortgages in lands already patented.    Upon the
delivery of these bonds and certificates to the stockholders, it was proposed to
wind up the affairs of the improvement company, and to receive from the
shareholders their receipts for installments paid, together with authority by
way of proxy to vote in their shares of stock, and to take all needful steps to
dissolve the corporation.    It was also stated in the circular that the New Or-
leans Pacific Railway Company would issue bonds to the holders of the land
certificates as the additional lands were patented to it by the United States
government.    It was further stated in the complaint that the construction
bonds received by the company from the railway company should amount to
the sum of $6,720,000, and that there was a deficit of $384,000 in these bonds,
as the construction company was willing to account for them, and a similar
deficit of 3,500 shares of the stock of the railway company.    It was further
averred in the complaint that the lands upon which the land-grant bonds were

to be issued should be appraised by an appraiser selected for that purpose, and that the holders of bonds locating the lands, under the privilege secured for that purpose, should take the lands at the value placed upon them by the appraiser; in that manner securing to each of the shareholders in the improvement company an equality of rights and privileges. But it was alleged that this equality had not been preserved, but that bonds had been issued by the officers of the company having charge of its affairs, under which they themselves, and others benefited by the delivery of such bonds, had appropriated valuable unappraised portions of the lands, leaving to the plaintiffs and other shareholders in the company an inferior quality of land, that would fail to compensate them for the amounts for which they held their bonds.

The two defendants who have demurred to the complaint set forth in their demurrers that the complaint failed to state facts sufficient to constitute a cause of action. In the demurrer of the defendant Scott this was qualified by the words "cause of action against him," and probably, without those words, it was designed that the other demurrer in which they were omitted should have the same effect. That the complaint, by the allegation of these facts, which have not been stated in it in any logical or consecutive order, did set forth a cause of action in favor of the plaintiffs, and of other stockholders who might make themselves parties to the action, seems to be reasonably free from doubt; for if the president and secretary of the company, united with its treasurer, and acting under the authority of the board of directors, deprived the plaintiffs of their rights and interests under these land-grant bonds, then they very manifestly had the right to come into court for the purpose of protecting themselves, and securing redress against this alleged injury, arising out of the manner in which in part these bonds had been distributed, and, to maintain their right, secured equally, to locate them upon the land of the railway company. The complaint sets forth the right of the plaintiffs in this respect, and this violation by the officers of the improvement company; and so far as that violation has extended, or may extend through the acts of the officers of the company, the plaintiffs are entitled to protection and redress, and that so far discloses a cause of action. To connect the defendants William L. Scott and William H. Barnum with this right of action, and to secure a part of the redress expected to be obtained against them, they have been alleged to be parties to the agreements and transactions through which the land grants were obtained from the New Orleans Pacific Railway Company, and by which the bonds were to be issued to the improvement company, and secured by a mortgage upon the land grant. In this connection it is stated that the defendant William H. Barnum became the president of the New Orleans, Baton Rouge & Vicksburg Railway Company, and that he and the defendant William L. Scott, with other parties representing the New Orleans Pacific Railway Company, made the agreement by which the land grant was to be assigned to the New Orleans Pacific Railway Company. It was further alleged that a supplemental agreement was also made and executed by the defendants William H. Barnum and William L. Scott, stating that it was agreed and understood that orders for 575,000 6 per cent. land-grant bonds, to be delivered to the defendant Barnum and his associates, should be accepted by the New Orleans Pacific Railway Company; and that a certain amount of the bonds were to be delivered to the defendant Barnum for the purpose of paying debts owing by the New Orleans, Baton Rouge & Vicksburg Railway Company. These agreements rendered it reasonably plain that these two defendants were to a great extent connected with and parties to the avenues devised under which the land-grant bonds were to be issued to the improvement company, which and whose shareholders were to be entitled to their benefit. It was also averred in the complaint that one-fourth of the bonds, not exceeding $1,000,000, were to be delivered to John J. McCook for the use of the defendant William H. Barnum and associates, but who those associates were has not been stated

or set forth in the complaint. This, however, as it has been set forth, is another circumstance tending to connect this particular defendant with the use and disposition of a part of the bonds forming the subject of the plaintiff's complaint. It was also added in the twenty-fifth paragraph of the complaint that the president and secretary of the improvement company, in violation of their duty and trusts as officers and directors, had combined and confederated with these two defendants, and other persons unknown to the plaintiffs, to secure to themselves the first of the bonds, in fraud of the rights of the plaintiffs and the other stockholders, and that some of such bonds had been issued to the defendants William H. Barnum, William L. Scott, Granville M. Dodge, the president of the improvement company, and John T. Granger, the secretary of that company, or to some person for their use; and that such use had been made by the defendants of bonds already issued that lands had been located under them, securing improper preferences over the rights of these plaintiffs and the other stockholders of the improvement company; that the other bonds already issued, and those afterwards to be issued, would accordingly be of small market value. These allegations did connect these two defendants with what has been alleged and relied upon in the complaint as an improper issue and use of a portion of these bonds, violating the agreement under which all the shareholders of the company were entitled to equal advantages. It has not been stated, neither is the fact to be inferred from anything contained in the complaint, that any of the bonds in this manner issued to these two defendants were obtained by them for a valuable consideration; but the statement simply is that they were delivered to these persons, and that delivery is charged to have been fraudulent, and prejudicial to the rights of the plaintiffs and the other stockholders in the company. These allegations, of course, were not designed to include the bonds which the defendant William H. Barnum was entitled to, for the purpose of paying the debts of the company of which he was the president. But they are limited to the bonds through which, it is stated, a fraudulent preference was obtained by these two defendants and the president and secretary of the improvement company, diminishing thereby the residue of the bonds, to be divided between the shareholders of the improvement company, very considerably in their value. By the judgment demanded, an accounting has been asked for of the transactions and affairs of the improvement company, and also of the receipts of money, stock, and bonds received by the officers of that company, and that these two defendants shall also account for the bonds received by them, and that the plaintiffs shall be decreed to be entitled to their distributive share or dividend of land-grant bonds in the hands of the improvement company, without the surrender of their installment receipts, or giving proxies to vote for a dissolution of the company, and that they shall have such further or other relief as they may be entitled to in the action; and these demands comprehend all that is essential to redress the wrongs alleged or apprehended by the plaintiffs. The substantial cause of action, it is evident, is the preservation of the equality of right of the shareholders, and this accounting is required from the company itself, and also from its officers and the demurring defendants; and contributory to that, and also to any other redress which the plaintiffs may be entitled to secure, will be the inquiry concerning the bonds alleged to have been delivered to the defendants William H. Barnum and William L. Scott, and received by them in this manner. That is an incident, certainly, of the right of action set forth in the complaint, and it is not important that it is not co-extensive with the right of action alleged, as long as it plainly affects a portion of the subject-matter to which the accounting will be addressed, and also the right and title of the plaintiffs to have these bonds included made a part of and considered in that accounting. If it had been stated in the complaint that the defendants William H. Barnum and William L. Scott had received these bonds for a valuable consideration without notice, then no right to join them in the ac-

$^t$ion would have existed. But the complaint discloses no such state of facts, but it, in substance, alleges that these bonds had been unlawfully and improperly received by these two defendants; and that they are chargeable with notice of the object and design of issuing the bonds is to be inferred from their participation in the agreements which were made concerning the bonds, and their acts in carrying out the transfer under the agreements; and sustaining, as they did, these relations to the principal subject-matter of the controversy, justified the plaintiffs in making them parties to the action. For in actions in courts of equity all persons may be brought in having any claim or interest in or to the subject-matter or any part of it to be affected by the action. This is the provision made by section 447 of the Code of Civil Procedure, and it was designed to include the preceding rule in equity permitting all parties to be brought into the action who may in any manner be affected by the controversy, or whose claims may pertinently be made the subject of examination and adjudication. The rule upon this subject is as broad as the necessities or proprieties of the case, and it has the sanction of an unbroken course of authorities. *Dodge* v *Woolsey*, 18 How. 331, 341; *Brinkerhoff* v. *Brown*, 6 Johns. Ch. 139; *Fellows* v *Fellows*, 4 Cow. 682; *Campbell* v. *Mackay*, 1 Mylne & C. 603; *Parr* v. *Attorney General*, 8 Clark & F. 409; *Attorney General* v. *Cradock*, 3 Mylne & C. 85; *Turner* v. *Conant*, 18 Abb. N. C. 160.

A further objection taken in support of the demurrers is that the action should have been brought by the improvement company itself, and that sufficient reason for the interference of the plaintiffs as stockholders has not been stated. It has been alleged that the president and secretary of the company were confederated with these two defendants and others in this misconduct set forth as the foundation of the action; and by the circular which has been issued and is contained in the complaint, through which it is alleged that an inequitable and unjustifiable settlement of the affairs of the company and distribution of its property are to be made, it is stated by the president to have been issued by order of the board of directors. And from this statement, as well as those relating to the conduct of these two officers, while the fact itself is not positively set forth in the complaint, it may reasonably be inferred that the board of directors, as well as these officers, sanctioned, and designed to carry out, an improper and inequitable division and distribution of the property and bonds, subject to the control of the improvement company; and that, under the authorities, as the law has generally been stated, is sufficient to entitle the shareholders to intervene for their own protection. It is true that the rule of law has not been so broadly laid down in *Hawes* v. *Oakland*, 104 U. S. 450; for notwithstanding the misconduct of the officers and directors themselves, it was there said that the shareholders should first be required to apply to them to bring an action in behalf of the corporation for the redress of the alleged misconduct. But the other authorities do not go to this extent. When the officers of the corporation are alleged to be themselves identified with and agents in the unlawful or wrongful act which is to be made the subject of inquiry and redress, there it has generally been assumed that no application by the shareholders to those persons is necessary before a suit may be maintained by the shareholders themselves. It has been considered that such an application would be entirely futile, for the reason that the officers could not be expected to institute a suit for the purpose of vindicating the company or its stockholders against the consequences or effects of their own misconduct; and that seems to be the more reasonable rule to be applied to cases of this description. It was enforced and followed in *Brewer v. Theatre*, 104 Mass. 378; *Smith* v. *Rathbun*, 22 Hun, 150; *Brinckerhoff* v. *Bostwick*, 88 N. Y. 52; *Currier* v. *Railroad Co.*, 35 Hun, 355; *Barr* v. *Railroad Co.*, 96 N. Y. 444; *Menier* v. *Hoopers, etc., Works*, L. R. 9 Ch. 353; *Mason* v. *Harris*, 11 Ch. Div. 97; and *Gray* v. *Steam-Ship Co.*, 3 Hun, 383, and *Leslie*

v. *Lorillard*, 40 Hun, 392, do not in any respect stand in conflict with this; rule.

But this action certainly is not wholly dependent upon this rule, or either of these authorities, for it has not been brought to vindicate or sustain the rights of the improvement company in these bonds, but it has been brought to maintain and secure the rights of the shareholders themselves. . It depends upon their interest or title to these bonds, and also to the other effects of the company designed to be distributed for the purpose of winding up its affairs and obtaining its dissolution. They have, therefore, a direct and important interest in the subject of the controversy in their own right, which it is the purpose and object of this action to secure and redress; and, as they have alleged these rights to have been violated by the officers of the company as well as by these two defendants, they have presented a right of action in their own favor, over which, at their instance, the court is bound to take jurisdiction, and, if the facts shall be found to sustain the statements made, to award appropriate and adequate relief. What the plaintiffs complain of are wrongs, not so much against the improvement company, as they are against themselves, and their own rights and interests; and an action for redress on account of such wrongs is in no respect dependent upon the authorities or principles relating to suits brought by stockholders to vindicate corporate rights against the misconduct of corporate officers and others. Upon the facts supporting this part of the complaint, the plaintiffs are entitled to maintain the action, even though the complaint would not be sufficient, if that was the nature of the action, to warrant a suit in their behalf to maintain the rights of the improvement company itself.

The facts, as they are set forth in the complaint, disclose but one cause of action. All that is demanded, and all that it is the plain endeavor of the plaintiffs to secure, is centered in one controlling statement of facts. The other facts are incidental to that extending the scope of the action, but not alleging or creating another cause or ground of action. The demurrers should not have been sustained, as they were, at the special term; and the judgments should be reversed, and judgment ordered for the plaintiffs on the demurrers, and the defendants should be permitted within 20 days to answer the complaint, on payment of the costs of the demurrers and the costs of the appeals.

VAN BRUNT, P. J., and BRADY, J., concur.