*New-Haven,*
*July, 1840.*

Mix
*v.*
Hotchkiss.

---

Mix and others *against* Hotchkiss and another :

### IN ERROR.

A bill in chancery is bad for multifariousness, where several plaintiffs, by one bill, demand several matters perfectly distinct and unconnected, against one defendant; or where one plaintiff demands several distinct and unconnected matters against several defendants : but where one general right is claimed, by the bill, though the defendants have separate and distinct interests, the bill is not multifarious.

Therefore, where the plaintiffs in a bill of foreclosure were mortgagees of all the property sought to be foreclosed, under original mortgage deeds, or by assignment; and the defendants claimed either title to or liens on several parcels of such property; it was held, that although there were several mortgages executed by different persons, at different times, yet as they all constituted but one general right in the plaintiffs, and but one object was sought by the bill, it was not bad for multifariousness.

Where the rights and interest of some of the defendants to a bill of foreclosure were distinct from each other, because they had subsequent mortgages upon separate and distinct parcels of the land mortgaged to the plaintiffs; yet as these defendants were all interested in the prior right of the plaintiffs, and neither could redeem his own until that right was satisfied; it was held, that a decree requiring each to pay the plaintiffs' debt, with interest and costs, by a certain time after that limited for the mortgagors, was correct.

The general principles of equity in regard to the marshalling of securities, are not applicable to our system, by which the mortgagee, upon foreclosure, obtains not a sale of the property for the satisfaction of his debt, but the property itself; and it would be manifest injustice to compel him to receive less than is secured to him by his mortgage deed; while no injustice is done to the subsequent incumbrancer, by refusing to interfere with the rights of the original parties, as settled by themselves, because he, by paying the original debt, becomes entitled to all the rights of the first mortgagee.

Where the mortgagee, at the request of the mortgagor, effected insurance on the mortgaged premises, and paid the premium, it was held, that the premium so paid was a charge upon the premises, in addition to, and equally with, the original debt.

Taxes upon the mortgaged premises, paid by the mortgagee, the payment of which was necessary to protect the estate, are a charge upon it.

As security for a debt due from *A*, *B* and *C*, a mortgage deed in their names was duly executed and acknowledged, by *A* and *B*, on the 28th of *February*, 1837, the day of its date, and was immediately left with the town-clerk for record. On the 17th of *April* following, *C*, by a power of attorney duly executed, authorized *A* to mortgage his real estate; by virtue of which power, *A*, on the 29th of *April*, executed the deed in the name and behalf of *C*. The deed was then again left with the town-clerk for record, who entered the additional matter in a blank left in his record for that purpose. *C's* power of attorney was also left with the town-clerk, at the same time; who afterwards recorded it at length, with the proper entry in the index, in the same book wherein the deed was recorded, but at a distance of eighty pages therefrom. *D* and *E* subsequently became interested in the mortgaged premises, with full knowledge of all these facts. On a bill of foreclosure against the mortgagors and *D* and *E*, it was held, 1. that the mortgage deed was well executed, by the mortgagors; 2. that *C's* power of attorney was recorded *with* the deed, within the meaning of the statute on that subject; but 3. if otherwise, neither the mortgagors, nor *D* and *E*, who had full notice, could take the exception.

*New-Haven*, July, 1840.

Mix
*v.*
Hotchkiss.

This was a bill for foreclosure, brought by *Henry Hotchkiss* and *Lucius Hotchkiss* against *Isaac Mix, Thomas Mix, George C. Mix, William Mix, Silas Mix, Jesse Peck* and *Elizur Hubbell*.

On the 28th of *February*, 1837, *Isaac Mix, Thomas Mix*, and *Isaac Mix*, jr., copartners under the firm of *Isaac Mix & Sons*, made and delivered their promissory note to the plaintiffs, promising to pay them, on demand, the sum of 20,000 dollars; to which note the following condition was annexed: "The condition of the above note is such that whereas we have this day executed a promissory note, of even date herewith, promising to pay to the said *H. & L. Hotchkiss*, or order, ninety days from date, at the *New-Haven County Bank*, the sum of 1000 dollars, which said note the said *H. & L. Hotchkiss* have, at our request, and for our accommodation and benefit, indorsed; and whereas the said *H. & L. Hotchkiss* have agreed with us, that they, or that *Lucius Hotchkiss*, one of the partners in said firm of *H. & L. Hotchkiss*, will indorse, when requested, all the renewal notes which we may give on said note of 1000 dollars, and also such other note or notes as we may make within twelve months from this date, payable to them, the said *H. & L. Hotchkiss*, or to said *Lucius Hotchkiss*, not exceeding in the whole the sum of 12,000 dollars, at any one time, and also the renewal notes thereon: Now, therefore, if we shall well and truly pay said note of

1000 dollars, and all the renewal notes thereon, and also all and every such note or notes as the said *H. & L. Hotchkiss,* or the said *Lucius Hotchkiss,* shall hereafter indorse for us, in pursuance of the above agreement, and all the renewal notes so as above-mentioned indorsed by them, or by the said *Lucius,* and shall also indemnify and save harmless the said *H. & L. Hotchkiss* and the said *Lucius* from all loss, cost, expense and damages, which may accrue to them, by reason of any such note or indorsement, now made, or hereafter to be made, by them as aforesaid, then the foregoing note to which this is a condition, shall be void, otherwise to be in full force." As collateral security for the performance of these stipulations, an instrument, purporting to be a mortgage deed from the makers of the note to the plaintiffs, of six separate parcels or lots of land in the city of *New-Haven,* with the buildings thereon, was executed as follows. On the 28th of *February,* 1837, the day of its date, it was signed and sealed, by *Isaac Mix* and *Thomas Mix,* and was by them duly acknowledged before a notary public in the city of *New-Haven,* and a certificate of such acknowledgment was duly made upon the deed. *Isaac Mix,* jr. did not then sign or seal the deed; but a blank space was left in the usual place of signature between the names of *Isaac* and *Thomas.* In this state the deed was delivered to the plaintiffs, and was by them left with the townclerk, to be recorded, on the 1st of *March,* 1837. He noted on it the time when it was so received, and afterwards recorded it at length on the records of deeds in the town. On the 17th of *April,* 1837, *Isaac Mix,* jr., by a power of attorney, legally executed and acknowledged, empowered *Isaac Mix* to convey, by mortgage or otherwise, all, or any part, of the real estate belonging to him, *Isaac Mix,* jr., in the city of *New-Haven;* and on the 28th or 29th of *April,* 1837, *Isaac Mix,* by virtue of such power of attorney, with the knowledge and consent of the plaintiffs and of *Thomas Mix,* signed and sealed the deed, in the blank space so left therein, thus—"*Isaac Mix,* jr., by *Isaac Mix,* attorney;" such execution being attested by two witnesses and acknowledged before a notary public, and the acknowledgment certified by him, in the usual form. The plaintiffs then again received the deed, and immediately delivered it to the town-clerk, who did not again record it at full length, or note on it the time when it was last left for re-

cord, but inserted in the record of it already made the signature of *Isaac Mix*, jr., by *Isaac Mix*, attorney, in the blank space there left; and on the side margin of the page of the book where the deed had before been recorded, he recorded the certificate of the last-mentioned acknowledgment, but did not, until some time in the month of *January*, 1840, and after the bringing of this suit, enter upon record the names and attestation of the witnesses to the last-mentioned execution, but then recorded them in the appropriate place in the page of the book where the deed was recorded. When the deed was last left for record, the power of attorney was also left for record, and the time was noted on it, by the town-clerk, who afterwards recorded it at length in the same book wherein the deed was recorded, but at a distance of eighty pages therefrom; and the page where it was so recorded was duly entered on the alphabet belonging to that book of records.

As further security for the payment of the note of 20,000 dollars, and the performance of the condition annexed thereto, *Isaac Mix*, on the 28th of *February*, 1837, mortgaged to the plaintiffs another parcel or lot of land in the city of *New-Haven*, with the buildings thereon, by a deed of warranty, duly executed and acknowledged, which was, on the following day, recorded in the town-clerk's office.

Within twelve months after the 28th of *February*, 1837, *Isaac Mix & Sons* made five promissory notes, payable to the plaintiffs, or *Lucius Hotchkiss*, the amount of which did not, at any one time, exceed the sum of 12,000 dollars, *viz.* one note for 1000 dollars, dated *March* 4th 1837, payable 90 days after date; one note for 1000 dollars, dated *March* 4th, 1837, payable four months after date; one note for 2000 dollars, of the same date, payable 112 days after date; one note for 1000 dollars, dated *April* 12th, 1837, payable 60 days after date; and one other note for 1200 dollars, dated *October* 5th, 1837, payable one year after date. All these notes were indorsed by the plaintiffs, or by *Lucius Hotchkiss*, at the request and for the benefit and accommodation of *Isaac Mix & Sons*, and in pursuance of the agreement mentioned in the condition of their note for 20,000 dollars, and were discounted for them, the four first by the *New-Haven County Bank*, and the last, by the *New-Haven Bank*. To renew these notes sundry other notes were afterwards made by them,

*New-Haven,*
*July, 1840.*

Mix
*v.*
Hotchkiss.

*New-Haven,*
*July, 1840.*

*Mix*
*v.*
*Hotchkiss.*

and indorsed by the plaintiffs, or by *Lucius Hotchkiss,* among which were the following, *viz.* one for 6,000 dollars, dated *January* 19th, 1839, payable 60 days after date ; one for 300 dollars, dated *April* 12th, 1839, payable 60 days after date ; and another for 256 dollars, 8 cents, dated *June* 7th, 1839, payable on demand. The three last-mentioned notes the makers failed to pay ; and the plaintiffs were obliged to pay them, and have not since been indemnified.

On the 6th of *April,* 1839, *Isaac Mix & Sons,* by their company name, made their promissory note, for 700 dollars, payable 60 days after date, which the plaintiffs also indorsed for the benefit of *Isaac Mix,* and which was discounted, by the *New-Haven Bank,* for the benefit of *Isaac Mix & Sons;* and on the 7th of *June,* 1839, *Isaac Mix, Thomas Mix,* and *Isaac Mix,* jr., gave the plaintiffs their joint and several note for 246 dollars, 8 cents, with interest. To secure the payment of the last-mentioned note to the plaintiffs, and to protect them from loss resulting from their indorsement of the other note, *Isaac Mix,* on the 7th of *June,* 1839, mortgaged to the plaintiffs his equity of redemption in another parcel of land in *New-Haven,* with the buildings thereon, by a deed, duly executed and acknowledged, which was recorded in the town records, on the day following. The makers of these notes failed to pay them; and the plaintiffs were compelled to pay the note for 700 dollars, which they had indorsed.

On the 31st of *March,* 1832, *Isaac Mix* was indebted to *William Mix,* by two other promissory notes, each for the sum of 1000 dollars, with interest annually, one being payable on the 1st of *April,* 1834, and the other on the 1st of *September,* 1835. To secure the payment of these notes, *Isaac Mix* mortgaged to *William Mix* a parcel of land in *New-Haven,* with the buildings thereon, being part of the premises mortgaged to the plaintiffs on the 7th of *June,* 1839, as above stated. This deed was dated the 31st of *March,* 1832, was duly executed and acknowledged, and was recorded on the same day. On the 15th of *July,* 1839, *William Mix,* by a deed, duly executed, acknowledged and recorded, assigned the two last-mentioned notes to the plaintiffs, and conveyed to them all the real estate mentioned in his mortgage deed from *Isaac Mix.* Thes notes have never been paid.

On the 12th of *May,* 1838, and the 26th of *February,*

1839, *Isaac Mix, Thomas Mix,* and *Isaac Mix,* jr., mortga-
ged five of the six pieces of land, with the buildings thereon,
which they had previously mortgaged to the plaintiffs, to
*George C. Mix,* and the sixth piece to *Jesse Peck.* These
last-mentioned mortgagees, when they received their mort-
gage deeds respectively, had notice of the plaintiffs' incum-
brances.

*New-Haven,*
July, 1840.

M1x
*v.*
Hotchkiss.

On the 29th of *April,* 1837, *Isaac Mix* mortgaged part of
the land and buildings described in his mortgage deed to the
plaintiffs of the 28th of *February,* 1837, to *Elizur Hubbell;*
and on the same day, (*viz.* the 29th of *April,* 1837,) *Isaac
Mix, Thomas Mix,* and *Isaac Mix,* jr., assigned and convey-
ed, by proper instruments, all their interest in all the premises
previously mortgaged to the plaintiffs, to *William Mix* and
*Jesse Peck,* in trust for the benefit of all the creditors of the
assignors, under the statute of 1828 relating to fraudulent con-
veyances. The trustees accepted this trust, and gave bonds
according to law.

On the 15th of *November,* 1839, *George C. Mix,* by a
proper instrument, assigned and conveyed to *Silas Mix* and
*Elizur Hubbell,* all his interest in the land and buildings pre-
viously mortgaged to him by *Isaac Mix & Sons,* in trust for
the benefit of all the creditors of the assignor, pursuant to the
statute.

On the hearing of the cause before the superior court, *Silas
Mix,* by writing under his hand, disclaimed having any inter-
est in any of the mortgaged premises; but it did not appear
that he had ever, by deed or otherwise, released any right
therein or any claims thereto.

The value of the five parcels of land, with the buildings
thereon, included in the mortgage of *Isaac Mix, Thomas Mix,*
and *Isaac Mix,* jr., to the plaintiffs, after deducting the amount
of the prior mortgage to *Edward Hine* of 2,374 dollars, 60
cents, on one of these parcels, was 5,380 dollars; and the
value of the other parcel included in that mortgage, was 1937
dollars. The value of the premises described in the first
mortgage from *Isaac Mix* to the plaintiffs, dated *February*
28th, 1837, was 7,300 dollars. The amount due on the
mortgage from *Isaac Mix* to *Wiliam Mix,* assigned to the
plaintiffs, is 2,572 dollars, 79 cents; the amount due on the
mortgage from *Isaac Mix, Thomas Mix,* and *Isaac Mix,* jr.,

*New-Haven,*
July, 1840.

Mix
*v.*
Hotchkiss.

to the plaintiffs, was 7,022 dollars, 31 cents ; and the amount due on the last mortgage from *Isaac Mix* to the plaintiffs, dated *June* 7th, 1839, was 993 dollars, 81 cents.

After the execution of the mortgage deed from *Isaac Mix, Thomas Mix,* and *Isaac Mix,* jr., to the plaintiffs, sundry taxes, lawfully laid, became payable, for which the mortgaged premises were liable ; and the plaintiffs, to prevent them from being levied upon and sold for the payment of such taxes, paid them to the amount of 136 dollars, 74 cents. They also paid premiums of insurance on the buildings, to the amount of 53 dollars, 88 cents ; and for rents of the land and buildings, 201 dollars, 65 cents ; making the amount due to the plaintiffs on said notes and mortgages, 10,577 dollars, 88 cents.

Upon these facts the court passed the following decree: " That unless the said *Isaac Mix, Thomas Mix,* and *Isaac Mix,* jr., and *William Mix* and *Jesse Peck,* as trustees, or some of them, shall pay to the plaintiffs said sum of 10,577 dollars, 88 cents, so due to them, together with the interest to accrue on the same from the 9th of *April,* 1810, and the costs of this bill, taxed at 81 dollars, 54 cents, on or before the first *Monday* of *January,* 1841, they, and each of them, their heirs, executors, administrators and assigns, shall be forever barred and foreclosed of all right, title, interest and equity of redemption in and to all said lands and buildings so mortgaged to the plaintiffs, by said *Isaac Mix, Thomas Mix,* and *Isaac Mix,* jr., and by said *Isaac Mix,* by his deed of *February* 28th, 1837 : And that unless said *George C. Mix, Silas Mix,* and *Elizur Hubbell,* as trustees, or some of them, shall, on or before the second *Monday* in *January,* 1841, pay to the plaintiffs said sum of 7,022 dollars, 31 cents, due on the mortgage from *Isaac Mix, Thomas Mix,* and *Isaac Mix,* jr., to the plaintiffs, together with the interest to accrue on the same from the 9th of *April,* 1840, and the costs of this bill, taxed at 81 dollars, 54 cents, they, the said *George C. Mix, Silas Mix,* and *Elizur Hubbell,* as trustees, and each of them, their heirs, &c. shall be forever barred and foreclosed of all right, title, interest and equity of redemption in and to said five pieces of land and buildings thereon first described in said mortgage deed from *Isaac Mix, Thomas Mix,* and *Isaac Mix,* jr., to the plaintiffs : And that unless said *Jesse Peck,* in his individual capacity, shall, on or before said second *Monday* in

*January*, 1841, pay to the plaintiffs said sum of 7,022 dollars, 31 cents, together with the interest to accrue thereon from the 9th of *April*, 1840, and the costs of this bill, he, the said *Jesse Peck*, his heirs, &c. shall be forever barred and foreclosed of all right, title, interest and equity of redemption in and to said piece of land and buildings last described in said mortgage deed from *Isaac Mix*, *Thomas Mix*, and *Isaac Mix*, jr., to the plaintiffs: And that unless said *Elizur Hubbell*, in his individual capacity, shall, on or before the second *Monday* in *January*, 1841, pay to the plaintiffs said sum of 7,022 dollars, 31 cents, together with the interest thereon to accrue from the 9th of *April*, 1840, and the costs of this bill, he, the said *Hubbell*, his heirs, &c. shall be forever barred and foreclosed of all right, title, interest and equity of redemption in and to the said pieces of land and buildings so mortgaged by said *Isaac Mix* to said *Hubbell :* And that in case of redemption of any part of the mortgaged premises, by any of the defendants, any sum of money which shall be hereafter received by the plaintiffs, before the time of such redemption as rent for that part of the premises so redeemed, shall be applied in part payment of the amounts so due to the plaintiffs."

To obtain a reversal of this decree, the present motion in error was brought, by the original defendants.

*Mix*, for the plaintiffs in error, contended, 1. That the bill was insufficient for multifariousness. It includes *distinct* subject matters, and unites *joint* with *several* matters. It conjoins a separate mortgage of *I. Mix* in 1832, on his separate land, with a mortgage from *I. Mix & Sons* in 1837, on other land. It unites a mortgage of *I. Mix & Sons* on joint land, with a mortgage from *I. Mix* on other several land, but for the same debt of the copartnership in 1837 ; and these it unites with another several mortgage of *I. Mix* (*June* 7th, 1839,) for a joint debt of *I. Mix & Sons*, but distinct from the joint debt of 1837 ; and this mortgage of *June* 7th, 1839, is on a part of *I. Mix's* several land, excluding that part which had intermediately been mortgaged to *Hubbell ;* and still *Hubbell* is joined in this bill. *George C. Mix* and *Jesse Peck*, who respectively have mortgages on distinct parcels of the *joint* land, are involved in the several and subsequent mortgages and separate debts of *I. Mix*. Was there ever

such a confusion! The consequence is, that the defendants are precluded from testifying as to matters foreign to them; are loaded with costs not their own; and the court are perplexed. 2 *Madd. Ch.* 294, 5. 2 *Sw. Dig.* 222. *Boyd* v. *Hoyt*, 5 *Paige* 65. *Coe* v. *Turner*, 5 *Conn. Rep.* 86. *Calv. Part.* 82—9. *Harrison* v. *Hogg*, 2 *Ves.* jr. 323. The subject matter of a bill to foreclose, is the land mortgaged, not the debt. A foreclosure is not an extinguishment of the debt, which may still be pursued.

No combination is charged in this bill; nor do the subject matters admit of combination; nor is there a common interest centering in one point. 2 *Madd.* 294. How are *Thomas Mix, Isaac Mix*, jr., *G. C. Mix, Peck* and *Hubbell* united in the *William Mix* debt and mortgage? How are even *Thomas Mix* and *Isaac Mix*, jr., united in *Isaac Mix's* separate mortgage? Or *Isaac Mix* or *Hubbell* in the joint debts and mortgages? Or how is *Hubbell* connected with the several mortgage for the joint debts?

2. That the court should have rejected all the evidence to prove an execution, acknowledging and recording of the deed of *February* 28th, 1837, by *Isaac Mix*, jr., as irrelevant, and should have founded nothing on that evidence. The time of recording, the record itself and the date of the record, could be proved by record evidence only. *Pendleton* v. *Button*, 3 *Conn. Rep.* 406. 11 *Conn. Rep.* 129. The record must also be *complete* before suit brought, or it gives no title as to third persons; and the power of attorney must be recorded *with* the deed, which was not done. *Stat. tit.* 56. *c.* 1. *s.* 9. *French* v. *Gray*, 2 *Conn. Rep.* 95. The finding of notice shews no notice of a power of attorney.

3. That the decree is inequitable and unprecedented. It throws on *George C. Mix, Peck* and *Hubbell*, the costs of foreclosing matters with which they have nothing to do. It makes one decree for them, and another for *Isaac Mix & Sons;* and it requires *Isaac Mix & Sons* to take on their joint land the mortgage of *June* 7th, 1839, which was put on the several land of *Isaac Mix*. It further compels *Thomas Mix* and *Isaac Mix*, jr., to be loaded on the joint land with the *William Mix* mortgage, with which they have no contract or privity. It allows money paid for *insurance* and *taxes*, without equity or precedent. It does not *marshall* the

parcels for *George C. Mix*, as it ought. The plaintiffs have two funds to secure them, *viz.* several as well as joint land; *George C. Mix* but one. *Lanoy* v. *Duke of Athol*, 2 *Atk.* 446. *Aldrich* v. *Cooper* & al. 8 *Ves.* 388.

*Baldwin* and *White*, for the defendants in error, contended,

1. That the bill was sufficient. The object of it is a single one, *viz.* to relieve the property mortgaged to the plaintiffs for the security of the debt due to them from the right of redemption remaining in the mortgagors. Nothing is sought by the bill but what is directly connected with and necessary to this relief. *Franklin* v. *Gorham*, 2 *Day*, 142. *Story on Eq. Plead.* 408. & seq. 233. & seq.

2. That the joint mortgage deed of *February* 28th, 1837, conveyed a good title to the plaintiffs against all the defendants.

In the first place, it is unquestionably valid as against *Isaac Mix* and *Thomas Mix*.

Secondly, it is valid as against *Isaac Mix*, jr., and the subsequent mortgagees. It was properly recorded, by the town-clerk, in every respect, except as to the names of the witnesses, before the mortgages to *George C. Mix* and *Jesse Peck*. The omission of the town-clerk to record the names of the witnesses, after the deed had been duly left for record, would not, in any case, prejudice the title of the grantees. *Booth* v. *Barnum*, 9 *Conn. Rep.* 289. *Hine* v. *Robbins*, 8 *Conn. Rep.* 342. *Judd* v. *Woodruff*, 2 *Root* 298. *Franklin* v. *Cannon*, 1 *Root* 500. *M'Donald* v. *Leach*, *Kirby* 72. *Gilbert* v. *Bulkley*, 5 *Conn. Rep.* 262. But here, as against *George C. Mix* and *Jesse Peck*, the recording of the deed was immaterial to the title of the plaintiffs, because they had *notice* of the deed. 4 *Kent's Com.* 163. *Le Neve* v. *Le Neve*, 3 *Atk.* 646. *Watson* v. *Wells*, 5 *Conn. Rep.* 468. *Haskell* v. *Bissell*, 11 *Conn. Rep.* 176. *Osborne* v. *Carr*, 12 *Conn. Rep.* 208. 1 *Sw. Dig.* 125. 2 *Sw. Dig.* 93. *Jackson* d. *Gilbert* v. *Burgott*, 10 *Johns. Rep.* 457. *Farnsworth* v. *Childs*, 4 *Mass. Rep.* 637.

Thirdly, the power of attorney was properly recorded.

3. That there was no error in the decree. In the first place, the payment of costs was properly decreed against *George C. Mix* and *Jesse Peck*. *Cowles* v. *Whitman*, 10

Conn. Rep. 121.   Secondly, *Thomas Mix* and *Isaac Mix*, jr., were properly required to pay the two notes of *June* 7th, 1839, or be foreclosed.   *Scripture* v. *Johnson*, 3 *Conn. Rep.* 211. *Phelps* v. *Ellsworth*, 3 *Day* 397.   2 *Sw. Dig.* 187.   Thirdly, *Thomas Mix* and *Isaac Mix*, jr., were properly required to pay the amount advanced, by the plaintiffs, to remove the prior incumbrance to *William Mix.*   Fourthly, it was not necessary to marshall the different parcels of land for the benefit of *George C. Mix.*   *Evertson* v. *Booth* & al. 19 *Johns. Rep.* 486.   Fifthly, the sums advanced by the plaintiffs for taxes and insurance were charges upon the mortgaged premises, which the mortgagors were properly required to pay.   *Faure* v. *Winans, Hop.* 283.   *Franklin* v. *Gorham,* 2 *Day* 142.

CHURCH, J.   The plaintiffs in error complain of the proceedings of the court below, for several reasons.

1. That the bill should have been adjudged multifarious, upon the demurrer.

An objection to a bill in equity for multifariousness, is well taken, when several plaintiffs, by one bill, demand several matters perfectly distinct and unconnected against one defendant ; or when one plaintiff demands several distinct and unconnected matters against several defendants.   But where one general right is claimed by the bill, though the defendants have separate and distinct interests, the bill is not multifarious.   *Fellows* v. *Fellows*, 4 *Cowen*, 682.   *Brinkerhoff* v. *Brown*, 6 *Johns. Ch. Rep.* 139.   *Cooper's Eq. Pl.* 182.   2 *Sw. Dig.* 222.   2 *Madd. Ch.* 234.   *Mitford's Pl.* 182.   If these principles be applied to this bill, we think it will be apparent that the demurrer was properly overruled.

The plaintiffs are mortgagees of the entire property sought to be foreclosed, under original mortgage deeds, or by assignment ; and all the defendants claim title to or liens on several portions of the property of which the plaintiffs are the first mortgagees.   The position of the plaintiffs, therefore, is not an uncommon one.   They claim one general right, which is, to foreclose all who make claim to any portion of the mortgaged premises, by subsequent titles.

*Isaac Mix, Thomas Mix,* and *Isaac Mix*, jr., on the 28th of *February*, 1837, were indebted to the plaintiffs, by a con-

New-Haven,
July, 1840.

Mix
v.
Hotchkiss.

ditional note of twenty thousand dollars ; and for its security, they then mortgaged to the plaintiffs a part of the land and buildings described in this bill ; and at the same time, and to secure the same debt, *Isaac Mix* mortgaged to the plaintiffs the remainder. These two mortgages, being executed at the same time, to the same creditors, as a security for the same debt, constitute but one pledge, and are so to be treated. On the 7th day of *June*, 1839, *Isaac Mix & Sons* again mortgaged to the plaintiffs a part of the same premises before mortgaged to secure another debt. And on the 15th day of *July*, 1839, the plaintiffs took an assignment from *William Mix* of a mortgage holden by him against *Isaac Mix* of a portion of the property, which the said *Isaac Mix* had as aforesaid mortgaged to the plaintiffs. This mortgage was the eldest lien upon the premises. These several mortgages constitute the plaintiffs' right ; and they are all, with the exception of the mortgage of *June* 7th, 1839, prior to any rights claimed by any of the defendants. And the bill does not seek to foreclose the mortgage of *June* 7th, 1839, as against any of the defendants, who stand before it.

2. We think the decree of the superior court is in conformity with the rights of all the parties to the bill. *Isaac Mix & Sons*, on the 12th of *May*, 1838, and the 26th of *February*, 1839, mortgaged a part of the premises to *George C. Mix*, one of the defendants. These mortgages were subsequent to the plaintiffs' mortgage of the 28th of *February*, 1837, upon the same premises. And the decree of the court is, that he and his assignees, *Silas Mix* and *Elizur Hubbell*, be foreclosed, unless they pay the debt secured by the plaintiffs' mortgage of the 28th of *February*, 1837.

*Isaac Mix & Sons*, also, on the 28th of *May*, 1838, mortgaged another part of said premises to *Jesse Peck*, another defendant. This mortgage being subsequent to the plaintiffs' mortgage of the 28th of *February*, 1837, upon the same land, the decree of the court is, that he be foreclosed, unless he pay the debt secured by the aforesaid mortgage of the plaintiffs.

*Isaac Mix*, on the 29th day of *April*, 1837, mortgaged a parcel of the land by him first mortgaged to the plaintiffs as aforesaid, to *Elizur Hubbell*. This mortgage being subsequent to the plaintiffs' first mortgage upon the same land, the decree of the superior court is, that he pay the debt secured

by that prior mortgage, or be foreclosed. And the decree of the superior court requires that the said *Isaac Mix* and *Isaac Mix & Sons,* who are parties to the first mortgage to the plaintiffs, and their assignees, shall pay the entire incumbrances upon the land thus mortgaged, or be foreclosed.

Now, in respect to the general subject, to wit, the mortgage of the 28th day of *February,* 1837, and the lands incumbered by it, the rights and interest of *George C. Mix, Jesse Peck* and *Elizur Hubbell,* are distinct from each other, because their mortgages are upon separate and distinct parcels of that land ; yet they are all interested in the first mortgage to the plaintiffs, and neither can redeem his own until that which is an incumbrance upon it, shall be paid. These facts bring the case within the operation of the principles before advanced, and within the principle laid down, by the chancellor, in the case of *Brinkerhoff* v. *Brown,* 6 *Johns. Ch. Rep.* 157. that "a bill against several persons must relate to matters of the same nature, having connexion with each other, and in which all the defendants are more or less concerned, though their rights in respect to the general subject of the case may be distinct." *Whaley* v. *Dawson,* 2 *Sch. & Lef.* 367.

This bill, therefore, is not multifarious ; and the decree is unobjectionable in the matters aforesaid.

3. Other objections to the decree require consideration also. *George C. Mix,* by his separate answer, claimed, that the securities should be so marshalled, as that the plaintiffs should be confined to such part of the mortgaged premises as had not been mortgaged to him. The general principles of equity in regard to the marshalling of securities, are well understood ; but whether they are applicable to our system, in cases where we do not direct the sale of the premises, is the question. We do not know, that they have ever been applied to mortgages of real estate here, as they have been in states and countries where the foreclosure of mortgages is effected, by a sale of the premises. Nor do we see how they can be, without essentially interfering with the rights of mortgagees as secured by contract. Where mortgaged premises are sold to satisfy incumbrances, there can be no injustice in compelling a first mortgagee to resort, in the first instance, to lands unincumbered by other liens. He is entitled to satisfaction in money ; and no matter to him where he begins to sell. But

in this state, the mortgagee, upon foreclosure, receives the land itself; and it would be manifest injustice to compel him to receive less than is secured to him by his deed. It would seem very much like impairing the obligation of a contract, by judicial authority. The contract is, that the mortgagee shall hold the whole land mortgaged until the whole debt is paid; and who shall say how much less is adequate security, when the parties have said that nothing less will be? No injustice can be done, by refusing to interfere with the rights of the original parties as settled by themselves, because a subsequent incumbrancer, (*George C. Mix,* in the present instance,) by paying the original debt, becomes entitled to all the rights of the first mortgagee. The true principle of marshalling securities, where it is proper to do it at all, is well stated, by *Spencer,* Ch. J. in the case of *Evertson* v. *Booth,* 19 *Johns. Rep.* 493. "A court of equity will take care not to give a junior creditor this relief, if it will endanger thereby the prior creditor, or in the least impair his prior right to raise his debt out of both funds. Where there exists any doubt of the sufficiency of that fund to which the junior creditor cannot resort, or even where the prior creditor is not willing to run the hazard of getting payment out of that fund, I know of no principle of equity, which can take from him any part of his security, until he is completely satisfied."

4. The superior court found due to the plaintiffs fifty-three dollars and eight cents, for premiums of insurance paid by them upon insurance of the buildings mortgaged, and also the sum of one hundred and thirty-six dollars, and seventy-four cents, for taxes upon the mortgaged property; and these sums are included in the amount to be paid by the defendants, upon a redemption; and this part of the decree is objected to. We need not determine whether, in ordinary cases of mortgages, the mortgagee would be warranted in effecting policies of insurance upon buildings, and charging over the premiums to the mortgagor; because, in the present case, it appears, that the insurances were effected at the request of the mortgagor; and in such case, there can be no doubt of the propriety of the charge. The amount paid for taxes was properly allowed: it was an advancement necessary for the protection of the estate. *Hamilton* v. *Denny,* 1 *Ball & B.* 202. Lord *Trimleston* v. *Hamill, Id.* 377.

Mix
*v.*
Hotchkiss.

5. Exceptions have also been taken to the execution and recording of the deed from *Isaac Mix & Sons* to the plaintiffs, of the 28th day of *February,* 1837.

*Isaac Mix* and *Thomas Mix* made a good execution and delivery of that mortgage, so far as they were concerned, and it was duly recorded so as to bind their interests and give preference to the plaintiffs, unless the subsequent execution of it by *Isaac Mix,* jr., under the circumstances found by the superior court, was such an alteration of it as to render it void. We do not think any such effect was produced, by the execution of the deed by *Isaac Mix,* jr. It was originally contemplated, by all the parties to that deed, that it should be subsequently executed and delivered by *Isaac Mix,* jr., in the very manner in which it was done. It was executed, by the consent of all persons interested.

This deed, after having been first duly recorded, was received by the grantors from the town-clerk, and on the 29th day of *April,* 1837, was executed by *Isaac Mix,* jr., by *Isaac Mix,* his attorney, by virtue of a power of attorney. This power of attorney was well recorded, and although, not upon the same page or leaf of the book of records with the mortgage deed, but at a distance of eighty pages from it; yet as it was duly entered upon the alphabet, and thus placed within the reach of every person who had occasion to examine the records, it was recorded *with* the deed, within the meaning of the statute on that subject. But whether this power of attorney, or the deed itself, after its execution by *Isaac Mix,* jr. was well recorded, or not recorded at all, we need not inquire; because it is expressly found, that *George C. Mix* and *Jesse Peck,* who alone became subsequently interested in the lands embraced by this mortgage, had full knowledge of it, when they received their respective deeds.

Upon a careful consideration of the several objections to the proceedings of the court below, we are of opinion, that there is no error in the judgment and decree of the superior court.

In this opinion the other Judges concurred.

Judgment affirmed.