MIDDLETOWN SAVINGS BANK *vs.* HENRY BACHARACH AND OTHERS.

One whose duty it is to pay a tax can not be a purchaser of the property offered for sale for the tax. The payment of the money will be regarded as a payment of the tax and not as a purchase of the property.

And this rule applies to a party who has become the owner of property subject to a tax.

And it makes no difference that the interest of the party is a small undivided interest in an equity of redemption.

If the party sustains such a relation to the property that he would have a right to redeem and if redeeming would be required to pay to the mortgagee the taxes paid by him, he can not be a purchaser at the sale of the property for taxes.

The act of 1875 provides that in a bill for a foreclosure the petitioner may pray for the possession of the land mortgaged, and that the court may, if it grants the foreclosure and finds the petitioner entitled to possession, issue an execution of ejectment for the delivery of the possession to the petitioner. Held not to be unconstitutional as infringing the right of trial by jury.

A bill for a foreclosure and other equitable relief is not multifarious because the interests of the different respondents are in separate portions of the property mortgaged, nor because some relief is asked for which does not affect them all.

BILL for a foreclosure, for the removal of a cloud upon the petitioners' title arising from tax sales, and for possession of the mortgaged premises; brought to the City Court of the city of Hartford. The following facts among others were found by the court:—

On the 14th of April, 1871, Alfred E. Ely, who then owned the premises, which consisted of a dwelling-house and lot in the city of Hartford, mortgaged the same to the petitioners to secure his note for $5,000. On the 10th of May, 1871, Ely conveyed the premises to Thomas K. Work, who at the same time mortgaged them back to Ely for $3,500. On the 9th of August, 1871, Work conveyed the premises to Daniel G. Knox. Knox held the title, subject only to the two mortgages, until the 4th of September, 1872, when certain of his creditors took by execution an undivided part of the equity of redemption. During the period between August 9th, 1871, and September 4th, 1872, taxes upon the property had accrued against Knox in favor of the town and city of Hartford and of the school district in which the property was situated. On the 30th of October, 1872, Henry Bacharach, one of the respondents, took by levy of execution about one undivided eighth of the equity of redemption. On the 1st of April, 1873, a portion of the premises, thirty-nine feet in front and running back to the rear of the lot, and including a part of the house, was sold upon a tax sale to Bacharach, the whole frontage of the premises being fifty-three feet. Later on the same day Ely transferred the Work mortgage to Bacharach.

The facts found with regard to the interests of the other respondents are not important to the case.

The deeds of the tax collectors to Bacharach were placed on record at the end of twelve months, there having been no redemption of the title conveyed by them.

Sundry facts were found with regard to the proceedings upon the tax sales, which were claimed by the petitioners to be irregular and void, but a statement of them is not important in the view of the case taken by the court.

Upon these facts the court (*Bennett, J.,*) granted the decree of foreclosure, found the petitioners entitled to possession, and ordered that an execution in ejectment issue upon the failure of the respondents, or some of them, to redeem.

The respondents Henry Bacharach and Rechiene Bacharach his wife, the latter of whom had acquired an interest, brought the record before this court by a motion in error.

*C. J. Cole* and *S. O. Prentice*, for the plaintiffs in error.

1. The petition should have been dismissed as multifarious. It combines distinct claims. The claims have no connection save that they pertain to the same premises. There is one claim under the mortgage; one of an entirely different nature by reason of the tax deeds; and a third for the possession of the premises. The parties respondent are different under each claim. Only the Bacharachs are the necessary respondents to the portion which prays for the removal of the cloud. Only the persons in possession are interested in the prayer for possession. Six respondents are brought into court and compelled to abide the result of a contest upon questions to which they are not proper parties. Adams' Equity, 309; Story's Eq. Pl., § 271.

2. The facts found disclose no ground for relief, and especially for the relief attempted to be given. If the petitioners are entitled to any relief, it must be upon such grounds that they have ample remedy at law. The court must have acted upon the ground that the several tax deeds were nullities. If so, they could have resorted to an action of ejectment. But they are entitled to no relief. If the tax deeds are valid the title of the respondents under them is superior to that of the petitioners under their mortgage, and therefore not subject to foreclosure under the mortgage. We contend that they are valid. Bacharach was not, as the court below held, disqualified from taking a good title under the tax sales. If disqualified, it must have been by reason of his relation to the property either under the levy of the execution or by his purchase of the second mortgage from Ely. The taxes had all accrued against Knox before Bacharach had any interest in the property. At the time of the levy and sale his only interest was under a levy of execution against Knox, upon which an undivided interest of about one-eighth of the equity had been set out to him. After the levy of the tax warrant, and upon the day of the sale, Bacharach acquired the ownership of the second mortgage. Under neither of these interests did he obtain possession of the premises. Neither of these interests prevented him from

acquiring a good title at the tax sale.   Unless it was his *duty*
to pay the taxes he was capable of taking the title.   The rule
is that one may not take advantage of his own *default* and
*non-performance of duty* to acquire titles as against others.
This duty must be—1st. A legal duty to the authorities to
pay the taxes in question; or 2d. A legal duty by a contract
to pay them, as in the case of a lessee by his lease agreeing to
pay them; or 3d. An equitable duty to pay them.   Cooley on
Taxation, 345; Burroughs on Taxation, 354.   That the
respondent owed either of the first two duties will not be
contended.   As to the equitable duty—how is it raised?   The
mere possession of an interest in the land does not of itself
raise this equitable duty.   It is the duty to pay the taxes
which determines the rights of the parties, not a mere naked
question of interest.   A large number of cases support a tax
title in one who had a prior interest in the premises, but was
out of possession at the time of purchase.   Possession and
the receipt of the rents and profits is in many of the cases
seized upon as raising an equitable duty to pay the taxes in
one who has a claim of title.   But then it is the duty which
disqualifies, not the interest.   Burroughs on Taxation, 354;
*Williams* v. *Townsend*, 31 N. York, 411; *Everett* v. *Beebe*, 37
Iowa, 452; *Light* v. *West*, 42 id., 138; *Besore* v. *Dosh*, 43
id., 211.   Even a mortgagee, out of possession, may purchase
a title as against the mortgagor, in spite of the equitable
relation of trustee to the mortgagor, which the counsel in the
cases have attempted to attach to him, and in spite of the
fact that the mortgagee by his mortgage holds the legal title
to the property.   *Williams* v. *Townsend*, 31 N. York, 414;
*Sturtevant* v. *Mather*, 20 Wisc., 576; *Walthall's Ex'rs* v. *Rives*,
34 Ala., 91; *Harrison* v. *Roberts*, 6 Fla., 711.   The Illinois
decisions alone go to the extent of holding that a mortgagee,
by virtue of that relation, is disqualified from taking a tax
title.   The reasons which the courts there urge seem to be
the equitable position, nearly akin to that of trustee, which
the mortgagee holds, and the fact that he has the legal title.
*Chickering* v. *Faile*, 26 Ill., 507; *Moore* v. *Titman*, 44 Ill.,
367.   The right of a mortgagor out of possession and not

legally liable for the tax, to purchase, is of course much stronger. No rule can anywhere be found which makes mere interest of any kind a disqualification. In the absence of any legal liability, as in this case, the question always resolves itself into one of equities. The pertinent inquiry is whether, under all the circumstances, it is equitable that the purchaser be held obligated to pay the tax, or receive the benefit of the purchase. There is no arbitrary rule growing out of privity of estate. There may exist the duty to pay without an interest, there may be an interest without a duty. Cooley on Taxation, 354. How stand the equities in this case? Bacharach was not in possession, and never received anything from the property. This in all the cases, where there is no legal duty, is made the great test. An equitable duty is never implied where the party is out of possession and not in receipt of rents and profits. *Blackwood* v. *Van Vleit*, 30 Mich., 121. But more. The taxes for which the property was sold were not collectible against Bacharach, and no statute or contract rendered him liable to the authorities or any individual. The law had simply applied a portion of the equity to the payment of a debt in favor of Bacharach, and that too after the taxes had accrued. *Lybrand* v. *Haney*, 31 Wisc., 230. Unlike a mortgagee he possessed an unelastic interest. The levy of the tax warrant placed Bacharach in the embarassing position, that he must see his interest disappear, or pay the taxes without hope of remuneration, or protect himself by a tax title. The petitioners were all this while in a position to pay the taxes and save themselves harmless. Will a court of equity suffer them to stand by and allow Bacharach in his dilemma to pay the taxes, and then come forward, and without remuneration, claim the property free from the lien which else existed upon it, and took precedence of their own claim. The taxes were liens which took precedence of the petitioners' mortgage. The satisfaction of them was, therefore, for the benefit of the property and for the benefit of the petitioners, and it is equitable that Bacharach, having been compelled to pay them for his own security, should enjoy their protection. Had he

allowed his judgment to rest, he would have been able to purchase.   Will it be held that he was placed in any worse position by having his execution levied?   It can not be claimed that he was debarred from taking a tax title by his purchase of the second mortgage.   That mortgage was not acquired until the tax title had been purchased.   The tax title and the rights of the purchaser thereunder date from the time of sale.   The right of redemption which the statute gives is merely a privilege.   It is attended with no obligations.   Bacharach, as second mortgagee out of possession, would not in any event have been precluded from taking the title.   The petitioners' proper remedy, if they have any, is by a bill to redeem.

3.   The court erred in granting an execution in ejectment in the premises.   The act of 1875 upon which its action was based does not contemplate a determination of conflicting questions of title and the issuing of an execution in ejectment; but only the giving of possession to the mortgagee in cases where there is no conflict, and the petitioner seeks what is his by unquestioned and uncontested right.   The object of the statute was to facilitate the remedy and lessen the trouble and expense of foreclosure.   It was not the purpose of the legislature to extend to courts of equity any semblance of a jurisdiction in ejectment.   Whether it was in its power to grant even this much, need not be here discussed.   But we contend that it had no power to confer upon courts of equity the jurisdiction which in this case the court attempted to exercise.   The constitution of this state provides that "the right of trial by jury shall remain inviolate."   Art. I., § 21. That the right of trial by jury in all cases involving titles to land existed prior to the adoption of our present constitution, and that therefore this right in all such cases is within the scope of the provision above cited, needs no argument.   It will not be denied that if the statute purports to give to courts of equity power to hear and finally determine questions of title, without providing (as this statute does not) for a hearing upon the facts by a jury, it is so far unconstitutional. The only grounds upon which the statute can be defended are

—1st, that it only allows the court to inquire into *the right of possession* of the property, not into the respective *titles* of the litigants; and 2d, that the action of the court is not *final.* To the first of these claims we urge—(*a.*) That in the nature of the case the court must first pass upon the titles of the parties before it can in any case determine who is entitled to possession. Title and the right of possession go hand in hand. In this country we have made no distinction between title and the right of possession. The right of possession follows the title. 1 Swift Dig., 508.—(*b.*) A party in possession of real property is presumed to have the right of possession, and *primâ facie* has the title. 1 Phillips Ev., 353; *Noyes* v. *Stillman*, 24 Conn., 21; *Hutchinson* v. *Perley*, 4 Cal., 33. In order to oust him the claimant must show a superior title in himself. In no other way can the presumption of law be rebutted. 3 Washburn Real Prop., book 3, ch. 2, sec. 7, art. 1.—(*c.*) In the present case the court necessarily passed upon the validity of the titles of the parties. The petitioners claimed under their mortgage; the respondents under the tax deeds. If the tax deeds gave a good title, then the petitioners were not entitled to possession. The issue was directly upon the supremacy of these two claims of title, and without hearing and determining the issue of title the court could not say who was entitled to the possession. To the second claim we answer, that if the court had jurisdiction, and that jurisdiction extended to a consideration of the title, as we have shown it necessarily must, then the action of the court is final and the respondents forever cut off from any appeal to the verdict of a jury. After the court has passed its decree the matter has become *res adjudicata.* A counter action of ejectment by the respondents would raise exactly the same issue, involve a consideration of precisely the same evidence, and necessitate a judgment upon the same point here determined, namely, the right of possession between the parties. This very question was raised upon a similar statute in Michigan, and it was decided that the act was unconstitutional, as infringing upon the constitutional provision that the right of trial by jury shall remain inviolate. *Tabor* v. *Cook*, 15 Mich., 322.

*H. S. Barbour* and *S. Barbour*, for the defendants in error.

1.  The petition, so far as it is an ordinary foreclosure bill, is in the usual form, and is sufficient in law. It is not rendered multifarious by there being included in it a prayer for the removal of a cloud from the petitioners' title. A bill is not multifarious when a single object is to be attained thereby. *Mix* v. *Hotchkiss*, 14 Conn., 42; *Cornwell* v. *Lee*, id., 528; *Wells* v. *Bridgeport Hydraulic Co.*, 30 id., 323; *Waters* v. *Hubbard*, 44 id., 347; 1 Daniell's Cha. Pl. & Pr., 336. The one single object, of perfecting our title under a fee simple mortgage, would not be attained, so long as this cloud remained on record, and to require that a subsequent suit should be brought for its removal and the making of our foreclosure effective, would occasion unnecessary expense, be a hardship on the parties, and violate a principle of equity, that a multiplicity of suits is to be avoided.

2.  The alleged tax title is of no actual validity. Bacharach's relation to the property was such that he could not legally buy at the sale. He held a second mortgage at the time. He also owned an undivided portion of the equity, and was full owner thereof May 12th, 1874, when the time for redemption was up, and the deeds were recorded, which is the time when, if at all, the deeds would become operative to pass title. Burroughs on Taxation, 321; Cooley on Tax Sales, 368. Neither the owner, mortgagor, grantee of mortgagor, nor a subsequent mortgagee, can buy at a tax sale, and thereby get a title precedent to that of the first mortgagee. Burroughs on Taxation, 352; 1 Jones on Mortg., § 680; 3 Washb. R. Prop., book 3, ch. 3, sec. 2, art. 25; *Piatt* v. *St. Clair's heirs*, 6 Ohio, 227; *Moss* v. *Shear*, 25 Cal., 45; *Choteau* v. *Jones*, 11 Ill., 322; *Fitzgerald* v. *Spain*, 30 Ark., 344.

3.  Questions of title may be inquired into in foreclosure suits. *Cowles* v. *Woodruff*, 8 Conn., 35; *Frink* v. *Branch*, 16 id., 267. Without such inquiry the court cannot determine whether there shall be a foreclosure, nor what its terms shall be. This inquiry may involve the petitioner's title, or that of any or all of the respondents. One reason for permitting this inquiry is, that full and complete justice may be

done between the parties. "It is a principle of equity, that if the court has jurisdiction of the case for one purpose, it will retain it for all purposes, and grant such relief as the parties show themselves entitled to receive." *Alden* v. *Trubee*, 44 Conn., 460. And it is not a valid objection that, for accomplishing some of these purposes, there may be adequate remedy at law. *Chipman* v. *City of Hartford*, 21 Conn., 498; *Downes* v. *Bristol*, 41 id., 274; *Alden* v. *Trubee*, 44 id., 455; *Richmond* v. *Dubuque &c. R. R. Co.*, 33 Iowa, 422; *People* v. *Chicago*, 53 Ill., 424; *Corby* v. *Bean*, 44 Misso., 379; *De Bemer* v. *Drew*, 39 How. Pr. R., 466; *Cuff* v. *Dorland*, 55 Barb., 481; *Hamilton* v. *Cummings*, 1 Johns. Cha., 517. Another reason is that a multiplicity of suits may be avoided.

4. It is obvious that the act of 1875 purports to give the power exercised by the court in this case. Is the act unconstitutional? We contend that it is not. In *Hartford Bridge Co.* v. *Union Ferry Co.*, 29 Conn., 210, it is held that "before an act of the legislature should be declared unconstitutional by the courts, its repugnance to the provisions or necessary implications of the constitution should be clear and beyond all reasonable doubt." In *Curtiss* v. *Gill*, 34 Conn., 49, it is held that "the constitution does not require that the title to land should be tried by a jury." And *Weed's Appeal from Probate*, 35 Conn., 452, decides that the statute is constitutional which allows a jury in trial of appeals from probate only in matters relating to the validity of wills. In petitions in equity, courts assume the character of jurors, take testimony, and decide as to facts, as important in many cases as the determination of the question whether the petitioner, in a bill for foreclosure, has such a title as to be entitled to the possession of the property. 2 Swift Dig., 277. This was the practice before and at the time of the adoption of the bill of rights which declares that "the right of trial by jury shall be inviolate." In 1807 the law was passed which is now in force, giving courts of equity power to pass the title to real estate by decree. Revision of 1808, p. 227. In this case the court may be considered as acting under this law. The statute is highly beneficial, both for petitioners and respondents,

in that it saves expense.   By it one suit serves the purpose of two.   It was formerly the practice to have two suits brought at the same time—foreclosure and ejectment—in the same court, and thus needless costs were made.   Our courts will be inclined to sustain this useful statute.

CARPENTER, J.   This is a petition for a foreclosure in the ordinary form, with a prayer for the removal of a cloud from the petitioners' title.   After the mortgage was given some portions of the premises were sold for taxes, and the purchasers are made respondents.   The court below granted the prayer of the petition, and pursuant to the statute directed execution to issue to put the petitioners in possession of the premises.   A motion in error by the respondents presents several questions for our consideration.

1.   It is objected that the bill is multifarious and ought to have been so adjudged by the City Court.

It may be true that different respondents may have distinct and separate interests in the property mortgaged, or portions of it, which they acquired after the mortgage was given, and that some relief is asked for which does not affect them all; but it is equally true that one general right is claimed by the bill—the extinguishment of the equity of redemption—unless the parties interested therein, or some of them, shall pay the debt within the time limited.   As the bill seeks, as its leading object, the foreclosure of the mortgage, it was necessary that all persons having such an interest in the property as to give them the right to redeem, should be made parties respondent. All other relief prayed for is incidental to this main object, and is for the purpose of making the foreclosure effective. That this incidental relief is asked for against some of the respondents and not against all, can not make the bill multifarious.   An injunction is often asked for against a particular respondent and not against all, but so long as it is prayed for merely as incidental to the principal relief sought and for the purpose of making that relief effective, it can not affect the sufficiency of the bill.   That such bills are not multifarious is well settled in this state.   *Mix* v. *Hotchkiss*, 14 Conn., 32;

*Wells* v. *The Bridgeport Hydraulic Co.*, 30 Conn., 316; *Waters* v. *Hubbard*, 44 Conn., 340.

2.   Bacharach, one of the respondents, levied an execution upon the equity of redemption, subject to a prior levy, and set off one-eighth thereof to himself.   Subsequently he purchased portions of the property at tax sales and took deeds to himself, which after the expiration of one year were duly recorded.   After the purchase of the tax title, but on the same day, he purchased a second mortgage upon the same property which was afterwards foreclosed.   He now claims that his tax title is superior in right to the title of the petitioners.   The court below decided otherwise, and that is assigned as error.

The counsel for the petitioners object to the validity of the tax title on the ground of alleged irregularities in the proceedings of the collectors.   These questions we pass by.

It is also objected that he paid the taxes as second mortgagee, and therefore was not capable of purchasing a tax title.   This objection rests mainly on the ground that that title did not vest until the expiration of the year, and that at that time he was clearly a second mortgagee.   If in addition it could be shown that he contemplated the purchase of the second mortgage when he purchased at the tax sale, the case would be much stronger against him than it now appears to be; although there is some presumption that he did so intend from the fact that both transactions were on the same day. But without pursuing this inquiry further, it would seem to be a reasonable proposition that a stranger to property offered for sale for taxes may purchase the property in good faith, and afterwards within the year purchase a second mortgage upon the property without invalidating his tax title. By paying the tax he acquires a right which may perhaps be regarded as a vested right, contingent however upon failure of redemption by the owner within a year, and becoming absolute upon such failure to redeem.   It is worthy of notice however that in this case Bacharach actually purchased of the collectors thirty-nine feet front and rear of the fifty-three feet mortgaged.   If the title thus acquired was prior in right

to the first mortgage it certainly was to the second; and yet by purchasing the second mortgage Bacharach practically recognized its priority to the tax title. We leave that question however undecided.

But a more serious objection to the validity of the tax title arises from the fact that Bacharach when he paid the taxes was the owner of, or at least interested in, one-eighth of the equity of redemption.

We base our discussion of this question upon the proposition, which seems to be conceded, that one whose duty it is to pay a tax cannot be a purchaser of property offered for sale for the purpose of collecting it. The payment of the money will be regarded as a payment of the tax and not as a purchase of property.

The word "duty" constitutes the debatable ground. Was it Bacharach's duty to pay the taxes? The answer to the question and the decision of this point must hinge upon the meaning which we attach to that word.

It does not signify merely a legal obligation. The party against whom a tax is assessed is directly liable for the tax and his duty is clear. So too a purchaser or lessee, who has contracted to pay the tax, has placed himself under such obligations, and has assumed such a relation to the property, that it is his duty to pay the taxes. In these cases, in which there is a direct legal obligation, there can be no question about the duty. But other parties may acquire an interest in real estate who are not directly responsible to the public for the taxes, and who enter into no contract in respect to them, and yet may be so situated that it is their duty to pay the taxes. For instance, a purchaser of the property or of the equity of redemption subject to a tax lien; he may be compelled to pay the taxes in order to protect his own title. In such cases it is for his interest to do so. Necessity and interest combine to make it, in a broad sense, his duty to do so. Such a party ordinarily cannot be a purchaser of a tax title. So too a mortgagee is under no legal obligation to pay the taxes, certainly as between himself and the mortgagor; and yet he may be compelled to pay them in order to protect his

mortgage. Although there may be cases which hold that under certain circumstances he may purchase a tax title, yet the general rule is that he cannot; and for the very good reason that it is not necessary for him to do so. He may pay the tax and the amount paid will be added to his debt, and he will hold the whole property as security therefor. In such a case it is unnecessary to complicate the legal title with a tax deed, and the law will not allow it to be done. It simply makes it his duty to pay in default of the mortgagor.

In this case the question arises between the mortgagee and one who has acquired an interest in the equity of redemption. If Bacharach had acquired the whole equity of redemption instead of one-eighth of it, it is entirely clear that, as between himself and the petitioners, it would be his duty to pay the taxes. Still, in a certain sense he was under no legal obligation to do so. He might abandon his interest in the property, in which case the tax could not be collected of him. Does it vary the case in principle that he owned less than the whole equity? We think not. Whether the equity of redemption be worth much or little, whether he owns the whole or a part, can make no difference. In either case, if his interest is worth protecting he will pay the tax. In neither case can he purchase a tax title.

Let us test this case by supposing a different state of facts. Suppose the petitioners had been compelled to pay the taxes. Unquestionably they could have added the amount paid to their demand, and any party redeeming must pay it. Now could Bacharach redeem by virtue of his interest in the equity of redemption? There can be but one answer to that question. Could he have been required, if he did redeem, to refund to the petitioners the taxes paid by them? The answer to that question is equally obvious. We think it is a proposition that cannot be controverted, that any party who sustains such a relation to the property that he has a right to redeem, and, if redeeming, may be required to refund to the mortgagee the taxes paid by him, cannot be a purchaser of the property if sold for taxes. As between him and the mortgagee it is his duty to pay the tax.

It was the duty therefore of Bacharach to pay the taxes on this property by virtue of his ownership of a part of the equity of redemption. Consequently he was not capable of purchasing at a tax sale, and the deeds to him conveyed no title.

3. The court below, pursuant to a statute authorizing it, decreed that an execution issue to put the petitioners in the possession of the property at the expiration of the time limited for redemption. This the respondents object to, on the ground that the statute which authorizes a court of chancery to oust a party in possession without a jury trial is unconstitutional.

It will be observed that the statute does not authorize a court of chancery to settle the title. The court did that as between the mortgagee and the owners of the equity of redemption, and in many other cases prior to and independent of the statute. It was formerly thought that it could not be done. *Broome* v. *Beers*, 6 Conn., 198; *Palmer* v. *Mead*, 7 Conn., 149. But it is now well settled that it can. *Cowles* v. *Woodruff*, 8 Conn., 35; *Frink* v. *Branch*, 16 Conn., 260; *Alden* v. *Trubee*, 44 Conn., 455. The only power therefore conferred by the statute is that of granting full relief by putting the petitioner in the possession of the property after the court by the exercise of its ordinary chancery powers has determined that he is entitled to it.

Before the statute the practice was for the petitioner to bring an action of ejectment at the time of petitioning for a foreclosure. If the decree was granted judgment in the action of ejectment followed almost as a matter of course, with stay of execution till the decree became absolute. The result was that the respondent was required to pay two bills of cost instead of one. The object of the statute was to save a multiplicity of suits by giving a court of equity the power to give complete relief. This is in harmony with another principle which is well established, that when a court of equity has jurisdiction of a cause to determine the rights of the parties, it will retain jurisdiction and give the appropriate relief.

We see nothing in the statute that is obnoxious to the constitution by infringing the right of trial by jury.

There is no error in the judgment complained of.

In this opinion the other judges concurred.