Dickmaít, J.
It is provided by section 2852 of the Revised Statutes that, if any person who shall be seized of lands as tenant in dower, shall neglect to pay the taxe& thereon, so long that such lands shall be sold for the payment of taxes, and shall not, within one year after such sale, redeem the same, according to law, such person shall forfeit to the person or persons next entitled to such lands in remainder or reversion, all the estate which he or she, so neglecting, may have in said lands; and the remainderman or reversioner may redeem such lands in the same manner that other lands may be redeemed after having been sold for taxes.
Lot number 89 was set off and assigned, in partition, to Isabel Clark for her dower in the lands of her deceased husband, John G. Clark, and subject to her dower estate, J. W. Clark, Arthur L. Clark and Susan E. Seffner, children and only heirs-at-law of John G. Clark, had a vested remainder in fee in the land, as tenants in common. When the dowress suffered the land to become delinquent for taxes, and to be sold, and failed to redeem the same within one year after sale, she forfeited her estate to those entitled in remainder. From such forfeiture no benefit could have accrued to the remaindermen, if the land had been purchased by strangers, and the remaindermen had neglected to redeem within the statutory period of two years. But, the purchasers at the tax sale were Arthur L. Clark, one of the tenants in common, and C. F. Seffner, the husband of one of the tenants in common, and under the deed of conveyance from the .auditor, the purchasers held the premises disencumbered from the dower interest.
The auditor’s deed, under the statute, vests in the grantee, his heirs and assigns, “ a good and valid title, both in law and equity;” but the question arises, whether by virtue of the tax sale and auditor’s deed, J. W. Clark was divested of all interest in the land, upon his failure to redeem his separate interest from his co-tenants, within two years. In our view, the relations existing between tenants in common— whether in possession of the property or entitled to an es *442 tate in remainder — is of a nature to preclude such a result. Just dealing and the confidence necessarily reposed in each other would suggest, that owners in common of real estate should consult for the mutual benefit. While one should do no act intentionally to the detriment of the other, good faith should withhold him from all action, in reference to the common property, that would work exclusively to his own advantage. The Supreme Court of Tennessee, in Tisdale v. Tisdale, 2 Sneed 599, in representing the fiduciary obligations between tenants in common, correctly say: “ Tenants in common by descent, aró placed in a confidential relation to each other, by operation of law, as to the joint property, and the same duties are imposed as if a joint trust were created by contract between them, or the act of a third party. Being associated in interest as tenants in common by descent, an implied obligation exists to sustain the common interest. This reciprocal obligation will be vindicated and enforced in a court of equity, as a trust. These relations of trust and confidence bind all to put forth their best exertions, and to embrace every opportunity to protect and secure the common interest, and forbid the assumption of a hostile attitude by either.” Nor is that trust and confidence that should exist between owners in common to be diminished, because they happen not to be in present possession of the estate in common, but are tenants in remainder, awaiting the termination of the precedent particular estate.
From the facts as disclosed by the record, we think that Arthur L. Clark and C. F. Seffner, in making the purchase at the tax sale, stood in a fiduciary capacity, and held the auditor’s deed in trust for J. W. Clark, Arthur L. Clark and Susan E. Seffner. It is said however, that so far as C. F. Seffner was concerned, it was a purchase by a stranger and not by a tenant in common. But though there may be a purchase at a tax sale by one not then a co-tenant, yet, if he be the agent of one of the co-tenants, or otherwise occupies a confidential relation to one of them, his purchase will generally be allowed no further effect than if made by his principal. This rule, it is. said by Mr. Freeman, in his treatise *443 on Co-tenancy, § 158, has probably been enforced, to prevent co-tenants from eluding the force of the prohibition against their acquisition of and enforcement of a hostile title, by colluding with their agents and others occupying confidential relations with them. And in Lee v. Fox, 6 Dana 171, it was decided that, the husband of a co-heiress, who had purchased an outstanding incumbrance on the lands of the heirs, should be held to have purchased for the benefit of all the tenants, upon condition only that they should contribute their respective proportion of the consideration actually paid for the incumbrance. Recognizing the rule that prohibits one tenant in common from buying in an outstanding adverse title for his exclusive benefit, and which holds it to inure to the benefit of his co-tenants, at their option, the Supreme Court of the United States, in Rothwell v. Dewees, 2 Black. 613, applied the rule to the case of a purchase of an outstanding interest by a husband of one of the tenants in common, who held the property as heirs of a common ancestor; and it was there recognized and considered, that the rule was based on a community of interest in a common title, which created such a relation of trust and confidence between the parties, that it would be inequitable to permit one of them to do anything to the prejudice of the other, in reference to the property so situated.
It is manifest that if a tenant in common, in whom a co-tenant and joint-heir reposes confidence, could, by allowing the common property to become delinquent for taxes, and then purchasing the same at tax sale, become the absolute owner as against his co-tenants, sound policy would sanction the rejection of such a rule. By holding the purchaser to be a trustee of the title for the. benefit of all the owners in common, the co-tenant might be protected in his rights. But that protection would be taken away, if the tenant in common, after suffering the property to be sold for the nonpayment of taxes, could, by buying it in at tax sale in the name of the husband, escape the obligations of a trustee, and absorb the interest of the co-tenant.
It is stated as a well settled principle, by the text writers, *444 and. in numerous decisions, that a tenant in common will not be permitted to assert against his co-tenant a title acquired by him at a sale for taxes imposed on the joint property. The purchase in such case will be held to inure to the benefit of the joint owners. A tenant in common holds a several interest in the lands, which is, however, so far identical with his co-tenants’ interest that, in all matters affecting the estate, he will be regarded as acting for them as well as himself. He cannot, therefore, as the owner of an undivided portion of the realty, acquire a title at a tax sale to defeat the title of the owners of other portions, and whatever interest he acquires will be simply a trust for all the co-tenants. Weare v. VanMetter, 42 Iowa 128; Fallon v. Chidester, 46 id. 588; Page v. Webster, 8 Mich. 263; Venable v. Beauchamp, 8 Dana 321; Choteau v. Jones, 11 Ill. 300; Allen v. Poole, 54 Miss. 323; Davis v. King, 87 Pa. St. 261.
In VanHorn v. Funda, 5 Johns. Ch. 388, it was held that, if it is admitted that one tenant in common may, in a particular case, purchase in an outstanding title, for his own benefit ; yet, where two devisees are in possession of land, under an imperfect title, devised to them by their common ancestor, one of them cannot buy up an outstanding or an adverse title, to disseize or expel his co-tenant; but such purchase will inure to their common benefit, subject to an equal contribution to the expense. In the case at bar, it is said that the dowress, and not the tenants in common, was in actual possession of the land at the time of the purchase at tax sale. But, at common law, the tenant for life and remainderman in fee are deemed so closely connected in interest that, if in the first place an estate for life is created or carved out of the fee and given to one person, and the residue or remainder of it is given to another person, both these interests are in fact only one estate. 2 Bl. Com., ch. 11; 2 Cruise Dig. Tit. 16, ch. 1. The lien of the state for taxes attached to the entire estate, and all the proceedings under the statute for the sale of the land for non-payment of taxes, are in rem. They operate, if at all, upon the land itself, and not merely upon the title of the person in whose name it may have been *445 listed for taxation. Jones v. Devore, 8 Ohio St. 430. Upon the sale of any land for delinquent taxes, the lien which the state has upon the land for taxes then due is transferred to the purchaser at'such sale. Revised Statutes, sec. 2880. But if the purchaser is one of several tenants in common by descent, he should not, we think, stand in any better position in relation to his co-tenants, than one of two devisees of a common ancestor, in possession under an imperfect title, who buys up an outstanding title to expel his co-tenant. The lien of the state for taxes is upon the common property; there is a community of interest in the preservation of the title; and the purchase should be considered as made for the common protection. Certainly the inequitable rule should not be applied, that, if the co-tenant does not redeem his separate estate within two years after the sale, all his interest in the estate shall pass to the purchasing tenant in common as absolute owner.
Where the tenant of the particular estate is in possession, and one tenant in common of the remainder in fee purchases the land when sold for taxes at delinquent sale, the deed of conveyance from the auditor, which the statute provides shall vest in the grantee “ a good and valid title,” will not, in our judgment, operate for his exclusive benefit, but for the benefit of all the owners in common. Indeed, it is laid down in authoritative decisions, as a general principle, that one who ought to pay the taxes on property, cannot, by omitting to do so, purchase at a sale of the property for the non-payment of taxes, and thereby strengthen his title; that the deed to him will convey no title; and that the payment of the money will be regarded as a payment of the .tax, and not as a purchase of the property. Middletown Savings Bank v. Bacharach, 46 Conn. 513; Blake v. Howe, 1 Aikens, 306, 15 Am. Dec. 684, note; Johnston v. Smith’s Adm’r, 70 Ala. 118. In Douglas v. Dangerfield, 10 Ohio 152, 158, it was held that, one in possession of lands claiming title, and in whose name it is listed for taxation, acquires no additional interest by suffering the land to be sold for taxes, and purchasing the same himself. Hitchcock, J., in delivering the opinion of the *446 court, said: “ The sale was made to the individual in whose name the land was taxed, who had it in possession, and who claimed to be the owner — to the individual who, under the circumstances was bound to pay the tax, and who did in fact pay it.....In our view, the complainant acquired no additional right by this purchase, and must be held to be in the same situation that he would have been had he paid the taxes before the sale.” It is contended, however, for the plaintiffs in error, that, in the case at bar, the remaindermen were under no obligation to pay the tax; that the tax was not assessed against them; and that they did not therefore stand in the position of persons who being bound to pay the tax, neglect to do so, and buy in the property at delinquent tax sale. And yet, as said by the court, in Middletown Savings Bank v. Bacharach, supra: “ In those cases, in which there is a direct legal obligation, there can be no question about the duty to-pay the taxes. But other parties may acquire an interest in real estate who are not directly responsible to the public for the taxes, and who enter into no contract in respect to them, and yet may be so situated that it is their duty to pay -the taxes. For instance, a purchaser of the property or of the equity of redemption subject to a tax lien; he may be compelled to pay the taxes in order to protect his own title. In such cases it is for his interest to do so. Necessity and interest combine to make it, in a broad sense, his duty to do so. Such a party ordinarily cannot be a purchaser of a tax title.” It was accordingly held, that Bacharaeh was not capable of purchasing at a tax sale, and that the deeds to him conveyed no title. And in Christy v. Fisher, 58 Cal. 256, it was declared to be the well settled doctrine, that one who is under a moral or legal obligation to pay the taxes, is not in a position to become a purchaser at a sale made for such taxes; and that if such person permits the property to be sold for taxes, and buys it in, either in person or indirectly through the agency of another, he does not thereby acquire any right or title to the property, but his purchase will be deemed one mode of paying the taxes.
By virtue of section 2854 of the Revised Statutes, any *447 part owner wbo shall pay the tax on the whole tract or tracts of which he is part owner, shall have a lien on the shares or parts of the other part owners for the tax paid in respect of their shares or parts. And. upon principles of equity, one tenant in common so making payment might compel a just contribution toward the payment of the amount expended. The circuit court, therefore, did not err in decreeing that J. W. Clark was the owner of the one third part of lot number 89, subject to an account for taxes paid by Arthur L. Clark and C. F. Seffner, and for repairs that may have been made by them, but was entitled to an account of the rents of the premises.
The original petition prays that priorities may be determined, and the property sold, and that the plaintiff may be paid the amount of his judgment out of the proceeds, with a prayer for, general relief. Whether the judgment debtor, J. W. Clark, had a legal interest in the land that could be sold on execution to satisfy the judgment, or only an equitable interest that was not the subject of seizure or levy under an execution at law, the exception taken in argument by the plaintiff in error, at this stage of the proceedings, to the. form of the original action, should not avail to prevent such interest from being applied in satisfaction of the claim of the judgment creditor, and the judgment of the circuit court should in our opinion be affirmed.

Judgment accordingly.